## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**FEDERAL TRADE COMMISSION**
    600 Pennsylvania Avenue, N.W.
    Washington, D.C. 20580,

                        Petitioner,

v.                                             Misc. Case No.

**HUMANA, INC.**
    500 West Main Street
    Louisville, KY 40202,

                        Respondent.

---

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EMERGENCY PETITION OF THE FEDERAL TRADE COMMISSION FOR AN ORDER ENFORCING SUBPOENA *DUCES TECUM* ISSUED IN A MERGER INVESTIGATION

The Federal Trade Commission asks this Court to consider this summary enforcement matter on an emergency basis.   This matter involves an FTC investigation of a proposed merger between Walgreens Boots Alliance ("Walgreens") and Rite Aid Corporation ("Rite Aid"), two major pharmacy chains, currently scheduled for consummation as soon as July 7, 2017.   To understand the competitive impact of this merger, the Commission issued a subpoena *duces tecum* to Humana, Inc. ("Humana"), but Humana has refused to comply with two of the four Specifications of the subpoena, even after the Commission, in response to Humana's administrative petition to quash, modified the subpoena and directed it to produce the requested materials no later than June 15, 2017.   To allow FTC staff sufficient time to review these materials and take them into consideration in its recommendation concerning a possible challenge to the merger prior to its consummation, FTC staff will need the required materials no

1

later than June 26, 2017.   The Commission will evaluate these materials, along with all of the

other materials gathered in the course of this investigation, in determining whether to seek

temporary and preliminary relief from a United States district court.   *See* 15 U.S.C. § 53(b).

Once that merger occurs, the Commission's ability to obtain effective relief in this matter, if the

transaction is later held unlawful, is much more difficult.   Pet. Exh. 1, ¶ 20.

## Preliminary Statement

This case involves the merger of two of the three largest pharmacy chains in the United

States, Walgreens and Rite Aid.   The Federal Trade Commission is conducting an investigation

to determine whether the transaction violates either the Federal Trade Commission Act or the

Clayton Act and would result in decreased competition between pharmacy chains for

participation in insurers' retail pharmacy networks, which could, in turn, lead to higher rates for

health plans and increased insurance premiums for consumers.   Although the FTC has sought

information directly from Walgreens and Rite Aid, the Commission also seeks to understand the

competitive impact of the merger by issuing a subpoena *duces tecum* to Humana, one of the

nation's largest providers of health insurance plans, including Medicare Part D plans.   Of

particular significance is Humana's Walmart Rx Plan, in which members pay reduced co-pays

when filling prescriptions at Walmart, but not when filling prescriptions at other pharmacy

chains, including Walgreens, Rite Aid, or CVS (a third major pharmacy chain).   The

Commission seeks to understand whether a retail pharmacy network that features Walmart as the

sole "preferred" provider—like Humana's Walmart Rx Plan—is a viable and attractive option for

plan sponsors in any geographic areas, and if so, which geographic areas.   Specifications 3 and

4, with which Humana refuses to comply, are the ones that seek documents related to the

Humana Walmart Rx Plan.   *See*, *e.g.*, Pet. Exh. 1, ¶¶ 5-11.

Humana has refused to cooperate with the Commission's subpoena.   By May 16, five weeks after the subpoena issued, it had made only a token production of five documents, comprising 13 pages, after which it filed a petition to limit in their entirety two of the four specifications.   Pet. Exh. 1, ¶ 12.   Although the Commission determined that the request for relief was not well founded, it agreed to modify the subpoena to limit Humana's production obligations to two custodians.   Pet. Exh. 5 at 9.   Despite these efforts to resolve the matter without litigation, Humana did not meet the Commission's June 15, 2017 deadline for documents responsive to Specifications 3 and 4.   On that date, Humana stated that it would not produce them at all, despite Humana's acknowledgement that it was able to produce them by June 22, 2017.   Pet. Exh. 1, ¶¶ 17-18.   Accordingly, the Commission petitions this Court, pursuant to Section 9 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 49 for an order requiring Humana to produce the documents and other materials sought by the Commission's subpoena.

## JURISDICTION AND VENUE

The FTC Act empowers the Commission to issue subpoenas in aid of the Commission's authority.[1]   If a subpoena recipient fails to comply, the Commission may petition the district court "within the jurisdiction of which such inquiry is carried on" for an order requiring compliance.   *See* 15 U.S.C. § 49.   The current investigation, including review of the proposed transaction by the Commission's economists and lawyers, is nationwide in scope but is being directed and carried on within this judicial district at the FTC's headquarters office in Washington, D.C.   Pet. Exh. 1, ¶ 1; *see also NLRB v. Cooper Tire & Rubber Co.*, 438 F.3d

---

[1]   Section 9 of the FTC Act, 15 U.S.C. § 49, grants the Commission authority to issue subpoenas seeking the testimony of a witness and the production of documents.

1198, 1202 (D.C. Cir. 2006) (holding that location of investigating office "may well be the most reasonable [venue] choice for purposes of subpoena enforcement"); *United States Intern. Trade Comm'n v. ASAT, Inc.*, 411 F.3d 245, 249 (D.C. Cir. 2005).   Accordingly, this Court should issue a show cause order requiring Humana to comply with the Commission's process.

## STATEMENT

On October 27, 2015, Walgreens and Rite Aid announced a proposed merger that would combine two of the largest retail pharmacy chains.   As a reportable merger under the Hart-Scott-Rodino Antitrust Improvements Act of 1976 and its implementing rules, the parties informed the Commission, which promptly began seeking information from the parties and then issued an investigational resolution in January 2016.   *See* Pet. Exh. 2.

As part of this investigation, on April 10, 2017, the FTC issued a subpoena *duces tecum* and subpoena *ad testificandum* to Humana seeking information regarding Humana's analysis of the merger and the company's prescription drug plans.   (This subpoena *ad testificandum* is not before the Court at this time.)   A principal purpose of those requests is to understand the potential impact of a Walgreens-Rite Aid merger on the retail pharmacy market, specifically, whether insurance plans that offer narrow or preferred retail pharmacy networks that exclude the combined entity, or all three major retail pharmacy chains, would be viable.   *See*, *e.g.*, Pet. Exh. 1, ¶¶ 5-10.

The subpoena *duces tecum* at issue is tailored to this purpose and includes only four specifications.   The first two specifications seek documents and information from Humana relating to the proposed Walgreens-Rite Aid merger, including a proposed divestiture to a third party buyer.   The third specification asks for information about the Humana Walmart Rx Plan. The fourth specification requests information about Humana's communications with the Centers

for Medicare & Medicaid Services ("CMS").   CMS approves Medicare Part D plans offered to

consumers, which involves ensuring that the plans (1) provide plan beneficiaries with sufficient

access to participating pharmacies in each geographic area and (2) do not misrepresent the

benefits or coverage offered to plan beneficiaries.   Pet. Exh. 1, ¶¶ 8, 11.

Humana and FTC staff met and conferred several times and FTC staff twice extended the

deadline for a response.   In turn, Humana made a token production of 13 pages in response to

Specifications 1 and 2.   Pet. Exh. 1, ¶ 12.   As of the final deadline of May 16, 2017, however,

Humana had not produced information in response to Specifications 3 and 4 and requested an

additional extension of time.   Staff denied this request, but offered other limitations, all of which

Humana rejected.   Humana then filed an administrative petition to limit the subpoena that same

day.   Pet. Exh. 1, ¶¶ 13-14; *see also* Pet. Exh. 4.

Although styled as a petition to "limit," the petition asked the Commission to quash

Specifications 3 and 4 in their entirety on several grounds, including relevance, burden, and the

claim that the materials sought were available from other sources, such as CMS itself.   On June

5, 2017, the Commission issued an order denying the petition.   Pet. Exh. 5.   The Commission

rejected each of Humana's arguments, finding that the information sought was relevant to the

FTC's investigation, that the company had not sufficiently supported its claims of burden, and

that the information sought was not reasonably available from other sources.   *Id.*   The

Commission, as an exercise of its discretion, nonetheless limited the subpoena to require

Humana to comply by producing documents from only two individual custodians and limited the

scope of Specification 3 by relieving Humana of the requirement to produce "all" responsive

documents and instead requiring it to produce only the documents responsive to the specific

subparts listed in the specification, consistent with staff's offer of May 16.   After doing so, the

5

Commission set a new deadline of June 15, 2017 for the production of responsive documents.

*Id.* at 9.   On June 15, Humana communicated that it would make a timely production of

documents responsive to Specifications 1 and 2, but that it would not produce documents

responsive to Specifications 3 and 4 of the subpoena.   Pet. Exh. 1, ¶¶ 17-18.

## ARGUMENT

Humana has refused to produce the information specified, even after the Commission

substantially narrowed the subpoena and directed Humana to comply.   For the reasons stated

below, the FTC is entitled to enforcement of its subpoena and this Court should order Humana to

comply.   The FTC respectfully requests that the Court treat this Petition as an emergency in

order to ensure that FTC staff obtains the information prior to completion of the merger.

Without swift judicial action, the FTC may be hampered in deciding whether to challenge the

Walgreens-Rite Aid transaction and to seek temporary and preliminary relief in advance of the

July 7, 2017, merger date.   The Commission would face the difficult choice of proceeding with

less than comprehensive information, or electing to delay any action and risking potentially

anticompetitive impacts from the completed merger.

### I.      Standards for Enforcement of Agency Process

The standards for the judicial enforcement of administrative compulsory process have

long been settled in this Circuit: "[T]he court's role in a proceeding to enforce an administrative

subpoena is a strictly limited one."   *FTC v. Texaco, Inc.*, 555 F.2d 862, 871-72 (D.C. Cir. 1977)

(*en banc*) (citing *Endicott Johnson v. Perkins*, 317 U.S. 501, 509 (1943)); *see also Oklahoma*

*Press Publ'g Co. v. Walling*, 327 U.S. 186, 209 (1946); *United States v. Morton Salt Co.*, 338

U.S. 632, 642-43 (1950).   And "while the court's function is 'neither minor nor ministerial,' the

scope of issues which may be litigated in an enforcement proceeding must be narrow, because of

the important governmental interest in the expeditious investigation of possible unlawful activity."   *Id.* at 872 (quoting *Oklahoma Press Publ'g*, 327 U.S. at 217 n.57); *accord*, *FTC v. Anderson*, 631 F.2d 741, 744-45 (D.C. Cir. 1979).

Thus, a district court must enforce agency investigative process so long as "the inquiry is within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant.   *See Texaco*, 555 F.2d at 872 (quoting *Morton Salt*, 338 U.S. at 652).   In making this determination, the agency's own appraisal of relevancy must be accepted so long as it is not "obviously wrong."   *FTC v. Invention Submission* Corp., 965 F.2d 1086, 1089 (D.C. Cir. 1992) (citing *FTC v. Carter*, 636 F.2d 781, 787-88 (D.C. Cir. 1980)).   Furthermore, proceedings to enforce administrative investigative subpoenas and CIDs are entitled to summary disposition.   They are special statutory matters cognizable under Fed. R. Civ. P. 81(a)(5), and are properly instituted by a petition and order to show cause (rather than by complaint and summons).   *See*, *e.g*., *FTC v. MacArthur*, 532 F.2d 1135, 1141-42 (D.C. Cir. 1976).   And they are summary in nature: "'discovery is improper in a summary subpoena enforcement proceeding.'"   *Carter*, 636 F.2d at 789 (quoting *United States v. Exxon Corp.*, 628 F.2d 70, 77 n.7 (D.C. Cir. 1980)); *accord*, *Invention Submission*, 965 F.2d at 1091.

## II.     The Subpoena is Lawful, Seeks Relevant Documents, and Is Not Unduly Burdensome

The subpoena *duces tecum* satisfies all the standards governing enforcement of FTC compulsory process.   The Commission lawfully issued the subpoena; the information and documents being sought plainly are relevant to the Commission's investigation; and compliance with the subpoena does not impose an undue burden.

### A.      The Subpoena Is Lawful

The Commission properly issued the subpoena as part of an investigation concerning possible violations of Section 5 of the FTC Act, 15 U.S.C. § 45,[2] and Section 7 of the Clayton Act, 15 U.S.C. § 18.[3]   The Commission initiated the investigation formally by issuing its investigational Resolution in January 2016.   Pet. Exh. 2.   This resolution authorizes the Commission to use compulsory process to determine whether the Walgreens-Rite Aid merger would have an unlawful anticompetitive effect.   *Id.*   Further, Section 9 of the FTC Act grants the Commission the authority to investigate the transaction and to issue subpoenas directing any "witnesses" to produce "all such documentary evidence relating to any matter under investigation."   *See* 15 U.S.C. § 49; *see also* 15 U.S.C. § 46 (authorizing the Commission to investigate corporations); 16 C.F.R. § 2.7(a) (authorizing Commissioners to issue subpoenas).

### B.      The Responsive Documents and Information Are Reasonably Relevant to the Commission's Investigation

The standard for judging relevancy in an investigatory proceeding is more relaxed than in

---

[2]   Section 5 provides in relevant part:

> (a)(1)   Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful.
>
> (2)   The Commission is hereby empowered and directed to prevent persons, partnerships, or corporations . . . from using unfair methods of competition in or affecting commerce . . . .

[3]   Section 7 provides in relevant part:

> No person engaged in commerce or in any activity affecting commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no person subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or part of the assets of another person . . . where in any line of commerce . . . the effect of such acquisition may be substantially to lessen competition . . . .

an adjudication.   In an investigatory proceeding, the Commission merely seeks to learn whether there is reason to believe that the law is being violated and, if so, whether issuance of a complaint would be in the public interest.   *See Texaco*, 555 F.2d at 872.   The requested materials, therefore, need only be relevant to the investigation – the boundary of which may be defined by the agency quite generally.   *See Carter*, 636 F.2d at 787-88; *Texaco*, 555 F.2d at 874 & n.26. Indeed, "a court must respect the agency's 'power of inquisition' and interpret relevance broadly."   *FTC v. Invention Submission Corp.*, 1991 U.S. Dist. LEXIS 5523 at *5 (D.D.C. Feb. 14, 1991) (quoting *Morton Salt*, 338 U.S. at 642), *aff'd*, 965 F.2d 1086.   As the D.C. Circuit has explained, "in the pre-complaint stage, an investigating agency is under no obligation to propound a narrowly focused theory of a possible future case."   *Texaco*, 555 F.2d at 874.

In the present investigation, the Commission seeks to assess the competitive impact of the proposed Walgreens-Rite Aid merger by, among other things, determining whether a retail pharmacy network which, like Humana's Walmart Rx Plan, includes only Walmart as a preferred provider, presents a viable and attractive alternative to networks featuring a combined Walgreens-Rite Aid entity.   Pet. Exh. 1, ¶¶ 5-10.   The documents and material requested by the subpoenas are plainly relevant to that inquiry because each of the specifications relates either to Humana's assessment of the merger and its competitive impact or to the Humana Walmart Rx Plan and its viability as an option for consumers of retail pharmacy services.

Indeed, although Humana claimed in its petition to limit that the information sought by Specifications 3 and 4 of the subpoena was irrelevant, the Commission rejected this argument and explained why this information was directly relevant to staff's investigation:   information about the Humana Walmart Rx Plan enabled FTC staff "to determine the degree to which Humana's Walmart Rx Plan is attractive to consumers in need of Medicare Part D coverage in

different geographic areas, which, in turn, will facilitate the FTC staff's analysis of the importance of competition between the merging parties in different geographic areas."   Pet. Exh. 5 at 4.

### C.    Compliance With the Subpoena Is Not Unduly Burdensome

Nor does the subpoena present an undue burden.   To establish this, Humana would have to show that compliance would threaten to disrupt its business unduly, or otherwise seriously hinder its operations.   *See*, *e.g.*, *Texaco*, 555 F.2d at 882; *Invention Submission Corp.*, 965 F.2d at 1090; *FTC v. Rockefeller*, 591 F.2d 182, 190 (2d. Cir. 1979).   Humana cannot make such a showing here.   The Commission already found that Humana had not supported its claim and in fact offered "nothing" more than "conclusory and unattributed statements" that were insufficient to establish undue burden, particularly in light of the company's size, resources, and business practices, which included responding to government inquiries and oversight.   Pet. Exh. 5 at 5-7. Humana's claim of burden is even less persuasive now, after the Commission modified the subpoena to require Humana to search for and produce documents and materials from only *two individual custodians*.   Humana—a major insurance provider that routinely responds to government inquiries—cannot establish that reviewing and producing this information will unduly disrupt or seriously hinder its business operations, as required by *Texaco* and other authorities.   Indeed, at one point Humana offered to produce the materials responsive to Specifications 3 and 4 on June 22, confirming that such production was not unduly burdensome. Pet. Exh. 1, ¶ 17.

Humana's contention that the requested information is available from other sources, including CMS, also must fail because the specifications of the subpoena are not limited to materials available from third parties.   Pet. Exh. 5 at 5.   For example, Specification 4 seeks not

only CMS's communications with Humana regarding the Humana Walmart Rx Plan, but also "Humana's communications with other third parties as well as Humana's internal analyses of its interactions with CMS, including its responses to any concerns CMS raised about Humana's plans related to pharmacy access[,]" documents to which "only Humana would have access." *Id.* (also concluding that information responsive to Specification 3 was not reasonably available from other sources).[4]

### III. Humana Should Be Ordered to Comply Immediately to Protect the Commission's Ability to Obtain Effective Relief Were It to Challenge the Transaction

The Commission asks the Court to treat this matter as an emergency.   Walgreens and Rite Aid have announced their intention to merge as early as July 7, 2017, which is only days away.   Between now and then, the Commission must be prepared to determine whether it has reason to believe that the transaction is unlawful under either the FTC or Clayton Acts and, if necessary, initiate an action to challenge the acquisition on a highly accelerated schedule.   As a result, time is of the essence.   FTC staff sought to require Humana to produce documents promptly, particularly certain key types of documents and data, so that staff could analyze them and complete the investigation expeditiously.   FTC projects that they will need at least four days to review the sought-after materials once they are produced in order to incorporate them into a recommendation to the Commission.   Consequently, Commission staff will need the documents by June 26, 2017.   Pet. Exh. 1, ¶ 20.

Any delay in the resolution of the petition may limit the Commission's ability to conduct

---

[4]   The Commission also concluded that even if the responsive documents were available from other sources, it was not obligated to seek documents from each separate source if Humana served as a single source that was "more convenient, less burdensome [and] less expensive." Pet. Exh. 5 at 5 & n.11 (citing *In re Exxon Valdez*, 142 F.R.D. 380, 382-83 (D.D.C. 1992)).

a comprehensive evaluation of the transaction.   Humana's unexplained refusal to comply with

the Commission's subpoena hampers the Commission's ability to evaluate the proposed

transaction and determine what action is in the public interest.

## CONCLUSION

The Commission's petition to enforce the subpoena should be granted, and the Court

should enter its own order requiring Respondents to provide the requested materials no later than

June 26, 2017.

Respectfully submitted,


DAVID C. SHONKA
Acting General Counsel
(D.C. Bar No. 224576)

LESLIE RICE MELMAN
Assistant General Counsel for Litigation
(D.C. Bar No. 266783)
LMelman@ftc.gov


    /s/ Burke W. Kappler
BURKE W. KAPPLER
Attorney, Office of General Counsel
(D.C. Bar No. 471936)

BRADLEY D. GROSSMAN
Attorney, Office of General Counsel
(Mass. Bar No. 669358)

FEDERAL TRADE COMMISSION
600 Pennsylvania Ave., N.W.
Washington, D.C. 20580
Tel:   (202) 326-2043 (Kappler)
Fax:   (202) 326-2477
E-mail: bkappler@ftc.gov

Date:   June 19, 2017