# Petition Exhibit 3

Subpoena *Duces Tecum* to Humana, Inc., April 10, 2017



# SUBPOENA DUCES TECUM

**RECEIVED APR 1 2 2017 HUMANA LAW DEPT**

| 1. TO | 2. FROM |
|---|---|
| Humana Inc.<br>c/o Matthew Varzally, Esq., Senior Counsel, Litigation & Investigations Group<br>500 West Main Street<br>Louisville, KY 40202 | UNITED STATES OF AMERICA<br>FEDERAL TRADE COMMISSION |

This subpoena requires you to appear and testify at the request of the Federal Trade Commission at a hearing (or deposition) in the proceeding described in Item 6.

| 3. LOCATION OF HEARING | 4. YOUR APPEARANCE WILL BE BEFORE |
|---|---|
| Federal Trade Commission<br>400 7th St. SW<br>Washington, DC 20024 | Dylan Brown, Esq. |
| | 5. DATE AND TIME OF HEARING OR DEPOSITION |
| | May 2, 2017* |

**6. SUBJECT OF INVESTIGATION**

Walgreens Boots Alliance, Inc.'s proposed acquisition of Rite Aid Corporation, File No. 161-0026.

See attached Resolution directing use of compulsory process.

**7. RECORDS YOU MUST BRING WITH YOU**

See attached Definitions, Instructions, and Specifications.

*In lieu of a personal appearance, please submit the requested materials along with a certification to the completeness and accuracy of the return by May 2, 2017.

| 8. RECORDS CUSTODIAN/DEPUTY RECORDS CUSTODIAN | 9. COMMISSION COUNSEL |
|---|---|
| Michael Moiseyev (Custodian)<br>Daniel Zach (Deputy Custodian) | Dylan Brown, Esq.<br>Federal Trade Commission<br>400 7th Street, S.W.<br>Washington, DC 20024<br>202-326-3283 |

| DATE ISSUED | COMMISSIONER'S SIGNATURE |
|---|---|
| 4/10/17 | *[signature]* |

## GENERAL INSTRUCTIONS

The delivery of this subpoena to you by any method prescribed by the Commission's Rules of Practice is legal service and may subject you to a penalty imposed by law for failure to comply.

### PETITION TO LIMIT OR QUASH

The Commission's Rules of Practice require that any petition to limit or quash this subpoena be filed within 20 days after service or, if the return date is less than 20 days after service, prior to the return date. The original and ten copies of the petition must be filed with the Secretary of the Federal Trade Commission. Send one copy to the Commission Counsel named in Item 9.

### TRAVEL EXPENSES

Use the enclosed travel voucher to claim compensation to which you are entitled as a witness for the Commission. The completed travel voucher and this subpoena should be presented to Commission Counsel for payment. If you are permanently or temporarily living somewhere other than the address on this subpoena and it would require excessive travel for you to appear, you must get prior approval from Commission Counsel.

A copy of the Commission's Rules of Practice is available online at http://bit.ly/FTCRulesofPractice. Paper copies are available upon request.

This subpoena does not require approval by OMB under the Paperwork Reduction Act of 1980.

FTC Form 68-B (rev. 9/92)

Petition Exhibit 3

**RETURN OF SERVICE**

I hereby certify that a duplicate original of the within
subpoena was duly served:   (check the method used)

○ in person.

○ by registered mail.

○ by leaving copy at principal office or place of business, to wit:

on the person named herein on:

(Month, day, and year)

(Name of person making service)

(Official title)

Petition Exhibit 3

## SUBPOENA *DUCES TECUM*
## ISSUED TO HUMANA INC.
## FTC File No. 161-0026

Unless modified by agreement with the staff of the Federal Trade Commission (the "Commission" or the "FTC"), each Specification of this Subpoena *Duces Tecum* ("SDT") requires a complete search of the Company as defined in the Definitions, which appear after the following Specifications. Pursuant to the Commission's Rules of Practice, 16 C.F.R. § 2.7(k), a Company representatives must confer with the Commission representative identified in the final Instruction of this SDT within 14 days after receipt of this SDT. If the Company believes that the required search or any other part of this SDT can be narrowed in any way that is consistent with the Commission's need for information, you are encouraged to discuss such questions and possible modifications with the Commission representative. All modifications to this SDT must be agreed to in writing pursuant to the Commission's Rules of Practice, 16 C.F.R. § 2.7(1).

### SPECIFICATIONS

1. Submit all documents relating to the Proposed Acquisition, including, but not limited to, documents relating to effects of the Proposed Acquisition, Company plans to respond, adapt, or react to the Proposed Acquisition, and potential efficiencies or cost savings that may result from the Proposed Acquisition, including all underlying data, analysis, and calculations.

2. Submit all documents relating to the potential divestiture of assets from Walgreens or Rite Aid to any person in connection with the Proposed Acquisition, including, but not limited to,

    a. Correspondence with any other person, including, but not limited to, Walgreens, Rite Aid, or any potential buyer of divested assets from Walgreens or Rite Aid in connection with the Proposed Acquisition; and

    b. Documents relating to any review, evaluation, or analysis of any potential divestiture of assets from Walgreens or Rite Aid to any other person, including, but not limited to, the impact of such a divestiture on retail pharmacy network offerings, composition, and reimbursement rates.

3. Submit all documents relating to the Humana Walmart Rx Plan retail pharmacy network, including, but not limited to,

    a. Correspondence with, or documents otherwise related to discussions with, Chains, PSAOs, or other providers of the Relevant Service regarding participation in the Humana Walmart Rx Plan and the terms of such participation;

    b. Documents relating to the Humana Walmart Rx Plan retail pharmacy network's ability to satisfy geographic access requirements of CMS or of current or

**SUBPOENA *DUCES TECUM***                                                            Page 2 of 11
Issued to Humana Inc.

prospective plan members, including communications with plan sponsors or insured individuals;

    c. Documents relating to any consideration or plans to alter the composition or benefit structure of the Humana Walmart Rx Plan retail pharmacy network, such as the inclusion of additional preferred cost-sharing pharmacies to provide the Relevant Service; and

    d. Documents relating to the actual or considered development or promotion of a Preferred Network with a benefit structure including more pharmacies as preferred cost-sharing pharmacies than the Humana Walmart Rx Plan, in response to CMS feedback, scrutiny, or concern regarding access to pharmacies offering preferred cost sharing.

4. Submit all documents reflecting or otherwise relating to communications with CMS regarding the following:

    a. Benefit designs or levels of access of any of the Humana Medicare PDP Plans' retail pharmacy networks;

    b. The benefit design or levels of access to pharmacies offering preferred cost sharing in the Humana Walmart Rx Plan;

    c. Beneficiary access to pharmacies offering preferred cost sharing in the Humana Walmart Rx Plan;

    d. Any action that CMS may take regarding any plan that offers insufficient meaningful access to pharmacies offering preferred cost-sharing;

    e. Findings, questions, concern, or warnings by CMS that the Humana Walmart Rx Plan may be offering access to preferred cost-sharing pharmacies in a way that may be misleading to beneficiaries;

    f. Findings, questions, concern, or warnings by CMS that Humana may be influencing beneficiaries to enroll in PDP plans in which beneficiaries do not have meaningful and/or convenient access to preferred cost-sharing pharmacies; and

    g. Findings, questions, concern, or warnings that the Humana Walmart Rx Plan retail pharmacy network, or the networks of any other Humana Medicare PDP plans, may offer an inadequate level of access to preferred cost sharing pharmacies.

**SUBPOENA *DUCES TECUM***                                                                             Page 3 of 11
Issued to Humana Inc.

## DEFINITIONS

For the purposes of this SDT, the following definitions apply:

A.    The term "the Company" or "Humana" means Humana Inc., its domestic and foreign parents, predecessors, subsidiaries, affiliates, partnerships, and joint ventures, and all directors, officers, principals, employees, agents, and representatives of the foregoing. The terms "subsidiary," "affiliate," and "joint venture" refer to any person in which there is partial (25% of more) or total ownership or control between the Company and any other person.

B.    The term "Rite Aid" means Rite Aid Corporation and all of its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing. The terms "subsidiary," "affiliate," and "joint venture" refer to any person in which there is partial (25% or more) or total ownership or control between Rite Aid and any other person.

C.    The term "Walgreens" means Walgreens Boots Alliance, Inc., its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing. The terms "subsidiary," "affiliate," and "joint venture" refer to any person in which there is partial (25% or more) or total ownership or control between Walgreens and any other person.

D.    The term "documents" means any information, on paper or electronic format, including written, recorded, and graphic materials of every kind in the possession, custody, or control of the Company. The term "documents" includes, without limitation: electronic mail messages; audio files, instant messages, drafts of documents; metadata and other bibliographic or historical data describing or relating to documents created, revised, or distributed electronically; copies of documents that are not identical duplicates of the originals in that person's files; and copies of documents the originals of which are not in the possession, custody, or control of the Company.

             1. Unless otherwise specified, the term "documents" excludes:

                     a. bills of lading, invoices, purchase orders, customs declarations, and other similar documents of a purely transactional nature;

                     b. architectural plans and engineering blueprints; and

                     c. documents solely relating to environmental, tax, human resources, OSHA, or ERISA issues.

**SUBPOENA *DUCES TECUM***                                                                                            Page 4 of 11
Issued to Humana Inc.

2. The term "computer files" includes information stored in, or accessible through, computer or other information retrieval systems. Thus, the Company should produce documents that exist in machine-readable form, including documents stored in personal computers, portable computers, workstations, minicomputers, mainframes, servers, backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether on or off Company premises. If the Company believes that the required search of backup disks and tapes and archive disks and tapes can be narrowed in any way that is consistent with the Commission's need for documents and information, you are encouraged to discuss a possible modification to this instruction with the Commission representatives identified on the last page of this SDT. The Commission representative will consider modifying this instruction to:

    a. exclude the search and production of files from backup disks and tapes and archive disks and tapes unless it appears that files are missing from files that exist in personal computers, portable computers, workstations, minicomputers, mainframes, and servers searched by the Company;

    b. limit the portion of backup disks and tapes and archive disks and tapes that needs to be searched and produced to certain key individuals, or certain time periods or certain Specifications identified by Commission representatives; or

    c. include other proposals consistent with Commission policy and the facts of the case.

E. The term "person" includes the Company and means any natural person, corporate entity, partnership, association, joint venture, government entity, or trust.

F. The term "relating to" means in whole or in part constituting, containing, concerning, discussing, describing, analyzing, identifying, or stating.

G. The terms "and" and "or" have both conjunctive and disjunctive meanings.

H. The term "plans" means tentative and preliminary proposals, recommendations, or considerations, whether or not finalized or authorized, as well as those that have been adopted.

I. The term "Chain" means any corporation that owns 50 or more pharmacy locations nationwide, either under a single banner or multiple banners, including but not limited to, Walgreens Boots Alliance, Inc., CVS Pharmacy, Wal-Mart Stores, Inc., Rite Aid, Inc., Ahold U.S.A., Inc., Albertsons Companies, Associated Food Stores, Inc., Aurora Health Care, Bartell Drug Co., Bashas' Grocery Stores, Bi Mart Corporation, Brookshire Brothers, Brookshire Grocery Company, CARE Pharmacies, Cerberus Capital

**SUBPOENA *DUCES TECUM***                                                                                 Page 5 of 11
Issued to Humana Inc.

        Management, Costco Wholesale Corporation, Delhaize America, Inc., Discount Drug Mart, Inc., Fred's Inc., Giant Eagle, Inc., The Golub Corporation, The Great Atlantic & Pacific Tea Company, LP, Haggen, Inc., Hy Vee, Inc., Ingles Markets Inc., K-VA-T Food Stores, Inc., Kinney Drugs, Inc., The Kroger Company, Lone Star Funds, Medicap Pharmacy, The Medicine Shoppe Pharmacy, Meijer, Inc., Publix Super Markets, Inc., Raley's Supermarkets, Roundy's Supermarkets, Inc., Sav-Mor Drug Stores, Inc., Save Mart Supermarkets, Inc., Schnuck Markets, Inc., ShopKo Stores Operating Co., LLC, Spartan Stores, Target Corporation, Top Markets, Inc., United Drug Cooperative, Wakefern Food Corporation, Wegmans Food Markets, Inc., and Weis Markets, Inc.

J.     "CMS" means the Centers for Medicare & Medicaid Services.

K.     "geographic access" means the proximity and geographic accessibility of preferred cost sharing pharmacies to plan beneficiaries in a Limited Network or Preferred Network.

L.     The term "Limited Network" means any retail pharmacy network that excludes certain pharmacies, Chains, or PSAOs from the network.

M.     The term "Preferred Network" means any retail pharmacy network where a group of pharmacies, Chains, or PSAOs designated as preferred pharmacies offer lower co-payments or other cost-saving structures to plan beneficiaries that non-preferred pharmacies do not provide.

N.     The term "prescription pharmaceuticals" means ethical drugs or pharmaceutical products generally dispensed by a licensed pharmacist.

O.     The term "Proposed Acquisition" means Walgreens' proposed acquisition of Rite Aid.

P.     The term "Pharmacy Services Administrative Organizations" or "PSAO" means any buying group, comprised of at least 50 independent pharmacies, that represents independent retail pharmacies in contract negotiations with PBMs and other third-party payers. The term PSAO may include, but is not limited to, Good Neighbor Pharmacy Provider Network, Access Health, LeaderNET, EPIC Pharmacy Network, Inc., Third Party Station, United Drugs, MHA Long Term Care Pharmacy Network, Third Party Network, American Pharmacy Network Solutions, TriNet Third Party Network, RxPr1de / Managed Pharmacy Care, Managed Care Connection, Medicine Shoppe International, and RxSelect Pharmacy Network.

Q.     The term "Retail Pharmacy Services" means the dispensing of prescription pharmaceuticals, in-person at a brick-and-mortar retail pharmacy.

R.     The term "retail pharmacy" means a retail site or store that dispenses prescription pharmaceuticals and other controlled substances.

S.     The term "Relevant Service" means Retail Pharmacy Services.

**SUBPOENA *DUCES TECUM***                                                             Page 6 of 11
Issued to Humana Inc.

## INSTRUCTIONS

For purposes of this SDT, the following instructions apply:

I. All references to year refer to calendar year. Unless otherwise specified, each of the Specifications calls for documents for each of the years from January 1, 2014 to the present.

II. This SDT shall be deemed continuing in nature so as to require production of all documents <u>responsive to any Specification included in this SDT</u> produced or obtained by the Company up to 45 calendar days prior to the date of the Company's full compliance with this SDT.

III. Do not produce any Sensitive Personally Identifiable Information ("Sensitive PII") prior to discussing the information with a Commission representative. If any document responsive to a particular Specification contains unresponsive Sensitive PII, redact the unresponsive Sensitive PII prior to producing the document.

The term "Sensitive Personally Identifiable Information" means an individual's Social Security Number alone; or an individual's name, address, or phone number in combination with one or more of the following:

- date of birth
- driver's license number or other state identification number, or a foreign country equivalent
- passport number
- financial account number
- credit or debit card number

IV. Forms of Production: The Company shall submit documents as instructed below absent written consent signed by an Assistant Director.

     a) Documents stored in electronic or hard copy formats in the ordinary course of business shall be submitted in electronic format provided that such copies are true, correct, and complete copies of the original documents:

         i. Submit Microsoft Access, Excel, and PowerPoint in native format with extracted text and metadata;

         ii. Submit all documents other than those provided pursuant to subparts (a)(i) or (a)(iii) in image format with extracted text and metadata; and

         iii. Submit all hard copy documents in image format accompanied by OCR.

     b) For each document submitted electronically, include the following metadata fields

SUBPOENA *DUCES TECUM*                                                     Page 7 of 11
Issued to Humana Inc.

and information:

    i. For loose electronic files other than email: beginning Bates or document identification number, ending Bates or document identification number, page count, custodian, creation date and time, modification date and time, last accessed date and time, size, location or path file name, and SHA Hash value;

    ii. For emails: beginning Bates or document identification number, ending Bates or document identification number, page count, custodian, to, from, CC, BCC, subject, date and time sent, child records (the beginning Bates or document identification number of attachments delimited by a semicolon);

    iii. For email attachments: beginning Bates or document identification number, ending Bates or document identification number, page count, custodian, creation date and time, modification date and time, last accessed date and time, size, location or path file name, parent record (beginning Bates or document identification number of parent email), and SHA Hash value; and

    iv. For hard copy documents: beginning Bates or document identification number, ending Bates or document identification number, page count, and custodian.

c) If the Company intends to utilize any de-duplication or email threading software or services when collecting or reviewing information that is stored in the Company's computer systems or electronic storage media in response to this SDT, or if the Company's computer systems contain or utilize such software, the Company must contact a Commission representative to determine, with the assistance of the appropriate government technical officials, whether and in what manner the Company may use such software or services when producing materials in response to this SDT.

d) For each Specification marked with an asterisk (*), and to the extent any other responsive data exists electronically, provide such data in Excel spreadsheet with all underlying data un-redacted and all underlying formulas and algorithms intact.

e) Submit electronic files and data as follows:

    i. For any production over 10 gigabytes, use IDE and EIDE hard disk drives, formatted in Microsoft Windows-compatible, uncompressed data in a USB 2.0 external enclosure; and

    ii. For productions under 10 gigabytes, CD-R CD-ROM and DVD-ROM for Windows-compatible personal computers, and USB 2.0 Flash Drives are also acceptable storage formats.

Petition Exhibit 3

**SUBPOENA *DUCES TECUM***                                                                                                Page 8 of 11
**Issued to Humana Inc.**

      iii.      All documents produced in electronic format shall be scanned for and free of viruses. The Commission will return any infected media for replacement, which may affect the timing of the Company's compliance with this SDT.

V.     All documents responsive to this SDT, regardless of format or form and regardless of whether submitted in paper or electronic form:

    a)    Shall be produced in complete form, un-redacted unless privileged, and in the order in which they appear in the Company's files and shall not be shuffled or otherwise rearranged. For example:

        i.    If in their original condition papers were stapled, clipped, or otherwise fastened together or maintained in file folders, binders, covers, or containers, they shall be produced in such form, and any documents that must be removed from their original folders, binders, covers, or containers in order to be produced shall be identified in a manner so as to clearly specify the folder, binder, cover, or container from which such documents came; and

        ii.    If in their original condition electronic documents were maintained in folders or otherwise organized, they shall be produced in such form and information shall be produced so as to clearly specify the folder or organization format.

    b)    If written in a language other than English, shall be translated into English, with the English translation attached to the foreign language document;

    c)    Shall be produced in color where necessary to interpret the document;

    d)    Shall be marked on each page with corporate identification and consecutive document control numbers;

    e)    Shall be accompanied by an affidavit of an officer of the Company stating that the copies are true, correct, and complete copies of the original documents; and

    f)    Shall be accompanied by an index that identifies: (i) the name of each person from whom responsive documents are submitted; and (ii) the corresponding consecutive document control number(s) used to identify that person's documents, and if submitted in paper form, the box number containing such documents. If the index exists as a computer file(s), provide the index both as a printed hard copy and in machine readable form (provided that Commission representatives determine prior to submission that the machine readable form would be in a format that allows the agency to use the computer files). The Commission representative will provide a sample index upon request.

VI.    If any material called for by this SDT is withheld based on a claim of protected status, 16

**SUBPOENA *DUCES TECUM***                                                                             Page 9 of 11
**Issued to Humana Inc.**

C.F.R. § 2.7(a)(4), the claim must be asserted no later than the return date of this SDT. In addition, pursuant to 16 C.F.R. § 2.11(a)(1), submit, together with the claim, a detailed log of the items withheld. The information in the log shall be of sufficient detail to enable the Commission staff to assess the validity of the claim for each document, including attachments, without disclosing the protected information. Unless modified by the Commission representative identified on the last page of this SDT, submit the log in a searchable and sortable electronic format, and, for each document, including attachments, provide:

a) Document control number(s)

b) The full title (if the withheld material is a document) and the full file name (if the withheld material is in electronic form);

c) A description of the material withheld (for example, a letter, memorandum, or email), including any attachments;

d) The date the material was created;

e) The date the material was sent to each recipient (if different from the date the material was created);

f) The email addresses, if any, or other electronic contact information to the extent used in the document, from which and to which each document was sent;

g) The names, titles, business addresses, email addresses or other electronic contact information, and relevant affiliations of all authors;

h) The names, titles, business addresses, email addresses or other electronic contact information, and relevant affiliations of all recipients of the material;

i) The names, titles, business addresses, email addresses or other electronic contact information, and relevant affiliations of all persons copied on the material;

j) The factual basis supporting the claim that the material is protected; and

k) Any other pertinent information necessary to support the assertion of protected status by operation of law.

In the log, identify by an asterisk each attorney who is an author, recipient, or person copied on the material. The titles, business addresses, email addresses, and relevant affiliations of all authors, recipients, and persons copied on the material may be provided in a legend appended to the log. However, provide in the log the information required by Instruction VI(f). The lead attorney or attorney responsible for supervising the review of the material and who made the determination to assert the claim of protected status must attest, in writing, to the log.

A document, including all attachments, may be withheld or redacted only to the extent

**SUBPOENA *DUCES TECUM***                                                                           Page 10 of 11
Issued to Humana Inc.

        necessary to preserve any claim of protected status. Unless otherwise provided in the instructions accompanying this SDT, and except for information and material subject to a valid claim of protected status, all responsive information and material shall be produced without redaction.

VII.    If the Company is unable to answer any questions fully, supply such information as is available. Explain why such answer is incomplete, the efforts made by the Company to obtain the information, and the source from which the complete answer may be obtained. If books and records that provide accurate answers are not available, enter best estimates and describe how the estimates were derived, including the sources or bases of such estimates. Estimated data should be followed by the notation "est." If there is no reasonable way for the Company to make an estimate, provide an explanation.

VIII.    If documents responsive to a particular Specification no longer exist for reasons other than the ordinary course of business or the implementation of the Company's document retention policy, but the Company has reason to believe have been in existence, state the circumstances under which they were lost or destroyed, describe the documents to the fullest extent possible, state the Specification(s) to which they are responsive, and identify persons having knowledge of the content of such documents. In order for the Company's response to this SDT to be complete, the attached certification form must be executed by the official supervising compliance with this SDT, notarized, and submitted along with the responsive materials.

Any questions you have relating to the scope or meaning of anything in this SDT or suggestions for possible modifications thereto should be directed to Dylan Brown at (202) 326-3283. The response to the SDT shall be addressed to the attention of Dylan Brown and delivered between 8:30 a.m. and 5:00 p.m. on any business day on or before **April 31, 2017** to Federal Trade Commission, 400 7th Street, SW, Washington, DC 20024. If you wish to submit your response by United States mail, please call one of the staff listed above for mailing instructions.

**SUBPOENA *DUCES TECUM*
Issued to Humana Inc.
FTC File No. 161-0026**

**CERTIFICATION**

This response to the *Subpoena Duces Tecum* issued by the Federal Trade Commission, together with any and all appendices and attachments thereto, was prepared and assembled under my supervision in accordance with instructions issued by the Federal Trade Commission. The information is, to the best of my knowledge, true, correct, and complete, subject to the recognition that where books and records do not provide the required data, reasonable estimates have been made. Where responses contain estimates, this is so stated in the response.

Where copies rather than original documents have been submitted, the copies are true, correct and complete. If the Commission uses such copies in any court or administrative proceeding, the Company will not object based on the Commission not offering the original document.

I declare under penalty of perjury that the foregoing is true and correct.

_____
TYPE OR PRINT NAME AND TITLE

_____
(Signature)

Subscribed and sworn to before me at the City of _____,

State of _____, this _____ day of _____, 20__.

_____
(Notary Public)

My Commission expires:

Petition Exhibit 3

UNITED STATES OF AMERICA
BEFORE THE FEDERAL TRADE COMMISSION

COMMISSIONERS:   Edith Ramirez, Chairwoman
                 Julie Brill
                 Maureen K. Ohlhausen
                 Terrell McSweeny

RESOLUTION AUTHORIZING USE OF COMPULSORY
PROCESS IN NONPUBLIC INVESTIGATION

File No. 161-0026

Nature and Scope of Investigation:

To determine whether the proposed acquisition of Rite Aid Corporation by Walgreens Boots Alliance, Inc. violates Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, as amended; to determine whether the aforesaid proposed acquisition, if consummated, would violate Section 7 of the Clayton Act, 15 U.S.C. § 18, or Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, as amended; and to determine whether the requirements of Section 7A of the Clayton Act, 15 U.S.C. § 18a, have been or will be fulfilled with respect to the proposed transaction.

The Federal Trade Commission hereby resolves and directs that any and all compulsory processes available to it be used in connection with this investigation.

Authority to Conduct Investigation:

Sections 6, 9, 10, and 20 of the Federal Trade Commission Act, 15 U.S.C. §§ 46, 49, 50, and 57b-1, as amended; FTC Procedures and Rules of Practice, 16 C.F.R. § 1.1, *et seq.* and supplements thereto.

By direction of the Commission.

Donald S. Clark
Secretary

**Issued:   January 5, 2016**

Petition Exhibit 3