# Petition Exhibit 4

Humana, Inc.'s Petition to Limit Subpoena *Duces Tecum*,
May 16, 2017

Stamp and Return                                                              PUBLIC

## UNITED STATES OF AMERICA
## BEFORE THE FEDERAL TRADE COMMISSION

In re

**PUBLIC**

Subpoena Duces Tecum                 FTC File No. 161-0026
dated April 10, 2017

DOCUMENT PROCESSING SECTION  2017 MAY 16  PM 4:47  FEDERAL TRADE COMMISSION

## HUMANA INC.'S PETITION TO LIMIT
## SUBPOENA *DUCES TECUM*

Richard W. Smith
Katherine C. Campbell
Wiley Rein LLP
1776 K Street, NW
Washington, DC 20006
Telephone: (202) 719-7000
Facsimile: (202) 719-7049
rwsmith@wileyrein.com
kcampbell@wileyrein.com

Dated: May 16, 2017                  *Counsel for Humana Inc.*

## I.    INTRODUCTION

Pursuant to 16 C.F.R. §§ 2.7(c) and 2.10, Humana Inc. petitions the Federal Trade

Commission to limit the subpoena *duces tecum* ("Subpoena") served on Humana on April 12,

2017.  Humana is not the subject of any known investigation, but was instead subpoenaed as a

non-party in connection with the FTC's investigation into the proposed acquisition of Rite Aid

Corporation by Walgreens Boots Alliance, Inc. ("Proposed Acquisition").  The Subpoena,

attached hereto as Exhibit A, is a quintessential example of a fishing expedition by the

government for irrelevant documents, with the full cost of that expedition being foisted upon

Humana, a non-party.  The Subpoena is grossly overbroad, and many of the specifications are

entirely unrelated to the FTC's investigation of the Proposed Acquisition.  Moreover, this is the

third set of non-party discovery demands that the FTC has served on Humana alone.  And in this

latest set of demands, the FTC is asking for many of the same documents that they had

previously included in their prior subpoenas, but had withdrawn, presumably because they were

not needed.  To exacerbate the burden, the FTC also has served a subpoena *ad testificandum* on

Humana, in which it has demanded that Humana prepare a corporate deponent to testify on a

series of exceptionally broad topics, many of which have little to do with the Proposed

Acquisition.[1]

The costs that Humana, a non-party, will be forced to endure in an effort to isolate,

collect, process, search for, review, and produce the documents demanded by the FTC are

enormous, while the benefit to the FTC, if any, is paltry.  Most of the sought-after documents are

irrelevant, and to make matters worse, the FTC has conceded that many of them are either

already in the possession of the agency from other sources, are publicly available, or could be

---

[1] The deadline for filing objections to the separate subpoena *ad testificandum* has been extended.

more readily obtained from another government agency, the Centers for Medicare and Medicaid Services ("CMS").

Humana has fully cooperated with the FTC both before the Subpoena was issued and after. The FTC issued a Civil Investigative Demand ("CID") and subpoena *duces tecum* to Humana on January 14, 2016, and then issued another CID to Humana on March 7, 2017. Humana fully cooperated with the FTC in response to these requests, making its employees available to the FTC for interviews and producing responsive documents.

With respect to the instant Subpoena, counsel for Humana has conferred with FTC staff on four occasions pursuant to 16 C.F.R. § 2.7(k) in an effort to identify particular documents that would be most helpful to the FTC's investigation and to determine a reasonable timeline for production. To date, Humana and FTC staff have reached an agreement with respect to Specifications 1 and 2, but have been unable to reach an agreement regarding Specifications 3 and 4. Even with respect to Specifications 1 and 2, the FTC has not released Humana from further demands, but instead has reserved its right to request additional documents beyond those that the parties have currently agreed shall be produced.

Particularly considering Humana's status as a non-party to the investigation, the FTC should limit the Subpoena to eliminate Specifications 3 and 4, which are grossly overbroad and irrelevant to, and outside the scope of, the subject matter of the investigation. To ensure that no objections are waived, Humana has set forth herein its full set of objections to all four of the Subpoena's specifications.

## II.    BACKGROUND

The FTC is investigating whether the proposed acquisition of Rite Aid Corporation by Walgreens Boots Alliance, Inc. violates Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, or Section 7 of the Clayton Act, 15 U.S.C. § 18, and whether that proposal meets

2

the requirements of Section 7A of the Clayton Act, 15 U.S.C. § 18a. *See* Ex. A at 14. In connection with this investigation, the FTC served a subpoena on Humana with four unreasonably overbroad specifications seeking (i) "all documents relating to the Proposed Acquisition"; (ii) "all documents relating to the potential divestiture of assets from Walgreens or Rite Aid to any person in connection with the Proposed Acquisition"; (iii) "all documents relating to the Humana Walmart Rx Plan"; and (iv) "all documents reflecting or otherwise relating to communications with CMS" on seven broad topics.

Humana met and conferred with FTC staff on four occasions (April 26, May 1, May 9, and May 16) in an effort to identify documents most helpful for the FTC's investigation and to determine whether such documents are readily available—without imposing an undue burden on Humana—to satisfy the FTC's stated needs. *See* Letter from Richard Smith and Katherine Campbell, Wiley Rein LLP, to Dylan Brown, FTC (Apr. 28, 2017) (attached hereto as Exhibit B); Letter from Richard Smith and Katherine Campbell, Wiley Rein LLP, to Dylan Brown, FTC (May 5, 2017) (attached hereto as Exhibit C). Regarding Specifications 1 and 2, Humana and FTC staff agreed that Humana would produce documents self-collected by two key Humana custodians related to the Proposed Merger and any potential divestiture. The FTC reserved the right to seek a broader production at a later time. *See* Ex. C. Humana produced the non-privileged documents that those two custodians self-collected on May 9. *See* Letter from Richard Smith and Katherine Campbell, Wiley Rein LLP, to Dylan Brown, FTC (May 9, 2017) (attached hereto as Exhibit D).

In a good-faith effort to provide the FTC with the documents it requested, and even though doing so was not required under the terms of the agreement Humana reached with the FTC as to Specifications 1 and 2, Humana has taken the voluntary step of formally collecting

3

documents from the two key custodians. Humana intends to produce additional non-privileged documents in response to Specifications 1 and 2 after those additional documents are fully processed and reviewed. Accordingly, Humana files this petition to limit with respect to Specifications 1 and 2 out of an abundance of caution and solely to preserve its objections pursuant to the Commission's Rules. *See* 16 C.F.R. § 2.10.

As of the date of this filing, Humana and FTC staff continue to work on resolving their dispute, but have been unable to reach agreement regarding Specifications 3 and 4. With respect to Specification 3, Humana offered (i) to produce slides describing the structure of Humana's prescription drug plans, (ii) to prepare an annotated chronology describing in some detail the history of Walgreens' participation or non-participation in those plans and its preferred/non-preferred status in those plans, and (iii) welcomed the Commission's input into the content of such a summary. The Commission, however, rejected that approach. *See* Ex. C. With respect to Specification 4, Humana notified the FTC staff that the central documents were publicly available to the FTC. Humana offered nonetheless (i) to produce any letters CMS sent to Humana concluding that the Humana plans were outliers with regard to geographic access and (ii) to identify with specificity the public reports prepared by CMS which describe each plan's access levels to preferred cost sharing pharmacies by geographic area. The Commission again rejected that approach. *See* Ex. C. Because Humana and the FTC have failed to reach an agreement regarding Specifications 3 and 4, Humana is forced to file the instant petition to limit the Subpoena.

By letters dated May 1 and 8, 2017, the FTC extended Humana's deadline to respond to the Subpoena, and the corresponding deadline to file a petition to limit or quash, until May 16, 2017; and to quash the subpoena *ad testificandum* until May 23, 2017. *See* Letter from Dylan

4

Brown, FTC, to Richard Smith, Wiley Rein LLP (May 1, 2017) (attached hereto as Exhibit E);

Letter from Dylan Brown, FTC, to Richard Smith, Wiley Rein LLP (May 8, 2017) (attached

hereto as Exhibit F). The FTC also agreed to reschedule the deposition date, to the extent one is

held, to May 30, 2017. *See* Ex. E. With respect to Specifications 1 and 2, Humana and FTC

staff agreed that Humana will produce documents from two key custodians related to the

proposed merger and any potential divestiture, and Humana has already begun producing such

documents. However, the FTC left open the possibility that it could require a broader collection.

Thus, Humana is forced to file its petition to limit or quash Specifications 1 and 2 in order to

avoid waiver of its objections. Humana and FTC staff continue to engage in discussions

regarding Specifications 3 and 4, but as of the date of this filing, have been unable to reach an

agreement. On May 16, 2017, Humana communicated with the FTC requesting another

extension, so that the parties could continue to engage in negotiations. The FTC failed to extend

the deadline, so Humana is forced to file this petition to limit the Subpoena.

## III.   ARGUMENT

### A.   Standard

The FTC is authorized by statute to issue subpoenas and to investigate unfair methods of

competition. 15 U.S.C. § 45; 16 C.F.R. § 2.7(c). However, the FTC's "[s]ubpoena enforcement

power is not limitless[.]" *F.T.C. v. Ken Roberts Co.*, 276 F.3d 583, 586 (D.C. Cir. 2001). As the

U.S. Supreme Court has warned, "governmental investigation into corporate matters may be of

such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the

investigatory power." *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). Particularly

when discovery is sought from a non-party, the subpoena must be reasonable. *See Dow Chem.*

*Co. v. Allen*, 672 F.2d 1262, 1267, 1277 (7th Cir. 1982) (affirming district court's denial of

enforcement of administrative subpoena against non-party); *F.T.C. v. Bowman*, 149 F. Supp.

5

624, 629-30 (N.D. Ill. 1957), *aff'd*, 248 F.2d 456 (7th Cir. 1957) ("the imposition of a heavy

burden upon a witness not a party to that proceeding should be avoided").

A subpoena that is "unduly burdensome or unreasonably broad" is not reasonable. *F.T.C.*

*v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C. Cir. 1977); *see also F.T.C. v. Turner*, 609 F.2d 743, 744

(5th Cir. 1980) (explaining demand must not be "too indefinite"). Thus, "disclosure of

subpoenaed information may be restricted where compliance would force an unreasonable

burden on the party from whom production is sought." *Dow Chem. Co.*, 672 F.2d at 1269.

Further, an administrative subpoena is unreasonable when the burden of compliance outweighs

the agency's need for the information or the probative value of the information sought. *Id.* at

1270. An administrative subpoena is also improper when the information sought is already

within the agency's possession. *See In re Civil Investigative Demand 15-439*, 2016 WL

4275853, at *7 (W.D. Va. Aug. 12, 2016) (citing *United States v. Powell*, 379 U.S. 48, 57-58

(1964)). Finally, an agency subpoena is improper if it seeks irrelevant information. *See Morton*

*Salt Co.*, 338 U.S. at 652 (warning that agency subpoena is improper if it is too indefinite or

irrelevant); *see also Turner*, 609 F.2d at 746 (denying enforcement of FTC subpoena where

information was not reasonably relevant to authorized FTC inquiry). The FTC's own Staff

Manual recognizes this principle. *See* FTC Staff Manual § 3.6.7.5.2(1) ("Care should be taken in

describing documents [in a subpoena *duces tecum*] to avoid return of irrelevant or redundant

materials.").

Here, the Subpoena meets each of the telltale signs of unreasonableness. *First*, it is

grossly broad and unduly burdensome by requesting that Humana, a non-party, produce "all

documents" related to four extremely broad subjects. Complying with the Subpoena as drafted

would force Humana to review and produce hundreds of thousands of documents.

*Second*, the Subpoena seeks information entirely unrelated to the FTC's investigation, and is duplicative of discovery that the FTC has already demanded from Humana—and which it previously conceded it did not need.   Therefore, the burden of compliance substantially outweighs any probative value of the information sought or the agency's need for such information.

*Third*, the documents that the FTC seeks in Specifications 3 and 4 are already in the possession of the FTC through another party, are publicly available, or are available through CMS and thus are already available to the Government.  Nevertheless, in the spirit of compromise, Humana has offered to identify with specificity the publicly available reports prepared by CMS which describe Humana plans' access levels to preferred cost sharing pharmacies by geographic area.  Humana has likewise offered to prepare an annotated chronology setting forth the information about which the FTC has stated it is most interested. The Commission has rejected both of these compromise approaches.  The FTC has represented that ███████████████████████████████████████████ ███████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ ███████████ All of this information is publicly available, and any internal Humana discussions on the subject, which are not privileged, are irrelevant and beyond the scope of the FTC's investigation.  Moreover, what Humana may or may not have internally speculated about what CMS might or might not do or conclude is entirely irrelevant to the FTC's investigation of Walgreens and Rite Aid and is beyond the bounds of what the FTC should be able to require from Humana.  It is difficult to fathom how any of these documents would benefit the FTC's investigation.

Petition Exhibit 4

Complying with the Subpoena would impose an enormous burden on Humana, a non-party, in terms of time, expense, and resources.  Humana should not have to shoulder the burden of collecting and reviewing thousands—if not more—irrelevant documents, ████████████

████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████

### B.    General Objections

1.    Humana objects generally to the Subpoena to the extent the specifications are duplicative of the January 14, 2016 CID; the January 14, 2016 subpoena *duces tecum*; or the March 7, 2017 CID.

2.    Humana objects generally to the Subpoena's return date as unduly burdensome.

3.    Humana objects generally to the Subpoena's instruction to respond on or before April 31, 2017, as confusing because no such date exists.

4.    Humana objects generally to the Subpoena insofar as it seeks privileged attorney-client communications or attorney work product material ("Privileged Information").

5.    Humana objects generally to the Subpoena insofar as it seeks confidential or proprietary information ("Confidential Information").

6.    Humana objects generally to the Subpoena to the extent it seeks information that is outside of Humana's custody, possession, or control.

7.    Humana objects generally to the date range of the Subpoena as overly broad.  The proposed acquisition was announced on October 27, 2015, yet the subpoena requests documents from January 1, 2014, to the present.

Petition Exhibit 4

8.     Humana objects generally to the Subpoena on the grounds of overbreadth and undue burden to the extent it seeks information or documents that are not obtainable through a reasonably diligent search by Humana.

9.     Humana objects generally to the Subpoena on the grounds that it seeks information that is publicly available, or readily available to the government through another agency.

10.     Humana objects generally to the Subpoena to the extent it seeks information that is irrelevant to, and outside the scope of, the subject matter of this investigation, the authorization for the subpoena, and the use of the FTC's investigatory compulsory process.

11.     Humana objects to the Subpoena's definition of "computer files" to the extent it includes backup disks and tapes.

12.     Humana objects generally to Subpoena Instruction(V)(a) to the extent it conflicts with Subpoena Instruction IV.

**C.     Specific Objections**

Subject to and without waiver of the general objections set forth above, which are incorporated below as if set forth in response to each specification, Humana specifically objects to each of the specifications.

**Specification 1:** Submit all documents relating to the Proposed Acquisition, including, but not limited to, documents relating to effects of the Proposed Acquisition, Company plans to respond, adapt, or react to the Proposed Acquisition, and potential efficiencies or cost savings that may result from the Proposed Acquisition, including all underlying data, analysis, and calculations.

**Specific Objections:** Humana incorporates herein by reference general objection numbers 1-2, 4-5, 7-8. Humana specifically objects to this specification as overly broad, unduly

burdensome, and not narrowly tailored (*i.e.*, seeking "all documents").  Humana further

specifically objects to the extent the specification seeks Privileged or Confidential Information.

**Response:**  Subject to and without waiver of its objections, Humana and the FTC agreed

that two key custodians would self-collect documents related to the proposed acquisition, and

Humana produced these documents on May 9.  Humana has also begun a formal collection of

these two custodians' documents and will produce non-privileged documents related to the

proposed acquisition after a privilege review.  Humana and the FTC agreed that no further

documents will be needed at this time.

**Specification 2:**  Submit all documents relating to the potential divestiture of assets from
Walgreens or Rite Aid to any person in connection with the Proposed Acquisition, including, but
not limited to
     a.     Correspondence with any other person, including, but not limited to, Walgreens,
Rite Aid, or any potential buyer of divested assets from Walgreens or Rite Aid in connection
with the Proposed Acquisition; and
     b.     Documents relating to any review, evaluation, or analysis of any potential
divestiture of assets from Walgreens or Rite Aid to any other person, including, but not limited
to, the impact of such a divestiture on retail pharmacy network offerings, composition, and
reimbursement rates.

**Specific Objections:**  Humana incorporates herein by reference general objection

numbers 1-2, 4-8.  Humana objects to this specification as overly broad, unduly burdensome, and

not narrowly tailored (*i.e.*, seeking "all documents").  Humana further objects to the extent the

specification seeks Privileged or Confidential Information.

**Response:**  Subject to and without waiver of its objections, Humana and the FTC agreed

that two key custodians would self-collect documents related to a potential divestiture, and

Humana produced these documents on May 9.  Humana has also begun a formal collection of

these two custodians' documents and will produce non-privileged documents related to a

10

potential divestiture after a privilege review.  Humana and the FTC agreed that no further

documents will be needed at this time.

**Specification 3:**  Submit all documents relating to the Humana Walmart Rx Plan retail
pharmacy network, including, but not limited to,

      a.      Correspondence with, or documents otherwise related to discussions with, Chains,
PSAOs, or other providers of the Relevant Service regarding participation in the Humana
Walmart Rx Plan and the terms of such participation;

      b.      Documents relating to the Humana Walmart Rx Plan retail pharmacy network's
ability to satisfy geographic access requirements of CMS or of current or prospective plan
members, including communications with plan sponsors or insured individuals;

      c.      Documents relating to any consideration or plans to alter the composition or
benefit structure of the Humana Walmart Rx Plan retail pharmacy network, such as the inclusion
of additional preferred cost-sharing pharmacies to provide the Relevant Service; and

      d.      Documents relating to the actual or considered development or promotion of a
Preferred Network with a benefit structure including more pharmacies as preferred cost-sharing
pharmacies than the Humana Walmart Rx Plan, in response to CMS feedback, scrutiny, or
concern regarding access to pharmacies offering preferred cost sharing.

**Specific Objections:**  Humana incorporates herein by reference general objection

numbers 1-2, 4-10.  Humana specifically objects to this specification as overly broad and unduly

burdensome.  Humana further specifically objects to this specification because it seeks

documents that are irrelevant to, and outside the scope of, the subject matter of this investigation,

the authorization for the subpoena, and the use of the FTC's investigatory compulsory process.

Humana also specifically objects to this specification because it seeks documents that are

publicly available to the FTC or readily available to the FTC through another government

agency.  Humana also specifically objects to the extent the specification seeks Privileged or

Confidential Information.

**Specification 4:**  Submit all documents reflecting or otherwise relating to
communications with CMS regarding the following:

      a.      Benefit designs or levels of access of any of the Humana Medicare PDP Plans'
retail pharmacy networks;

Petition Exhibit 4

b.      The benefit design or levels of access to pharmacies offering preferred cost sharing in the Humana Walmart Rx Plan;

c.      Beneficiary access to pharmacies offering preferred cost sharing in the Humana Walmart Rx Plan;

d.      Any action that CMS may take regarding any plan that offers insufficient meaningful access to pharmacies offering preferred cost-sharing;

e.      Findings, questions, concern, or warnings by CMS that the Humana Walmart Rx Plan may be offering access to preferred cost-sharing pharmacies in a way that may be misleading to beneficiaries;

f.      Findings, questions, concern, or warnings by CMS that Humana may be influencing beneficiaries to enroll in PDP plans in which beneficiaries do not have meaningful and/or convenient access to preferred cost-sharing pharmacies; and

g.      Findings, questions, concern, or warnings that the Humana Walmart Rx Plan retail pharmacy network, or the networks of any other Humana Medicare PDP plans, may offer an inadequate level of access to preferred cost sharing pharmacies.

**Specific Objections:**  Humana incorporates herein by reference general objection numbers 1-2, 4-10.  Humana specifically objects to this specification as overly broad and unduly burdensome.  Humana further specifically objects to this specification because it seeks documents that are irrelevant to, and outside the scope of, the subject matter of this investigation, the authorization for the subpoena, and the use of the FTC's investigatory compulsory process. Humana also specifically objects to this specification because it seeks documents that are publicly available to the FTC or readily available to the FTC through another government agency.  Humana further specifically objects to the extent the specification seeks Privileged or Confidential Information.

## IV.    CONCLUSION

For the reasons set forth above, Humana respectfully requests that the FTC grant the instant petition to limit the Subpoena based on the objections set forth herein.

Petition Exhibit 4

Dated:  May 16, 2017                    Respectfully submitted,

**WILEY REIN LLP**


By:   _Richard W Smith_  _____
      Richard W. Smith
      Katherine C. Campbell
      Wiley Rein LLP
      1776 K Street, NW
      Washington, DC 20006
      Telephone: (202) 719-7000
      Facsimile: (202) 719-7049
      rwsmith@wileyrein.com
      kcampbell@wileyrein.com

      *Counsel for Humana Inc.*

## STATEMENT OF CONFERENCE

I hereby certify that I, counsel for petitioner Humana Inc., conferred with the FTC on April 26, May 1, May 9, and May 16, 2017, in a good-faith effort to resolve the issues raised in this petition and have been unable to reach agreement on the issues set forth herein. Regarding Specifications 1 and 2, Humana and the FTC agreed that two key custodians would self-collect documents related to the proposed acquisition and a potential divestiture, and Humana produced these documents on May 9. Though not required to do so, Humana has also begun a voluntary formal collection of these two custodians' documents and will produce additional non-privileged documents related to the proposed acquisition and potential divestiture after a privilege review. Humana and the FTC have been unable to reach an agreement with respect to Specifications 3 and 4.

Richard W. Smith

14

PUBLIC

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of May, 2017, I caused the original and 12 copies of the foregoing document and all attachments to be hand delivered to the Federal Trade Commission, Office of the Secretary, 400 7th Street, SW, Washington, DC 20024.

Richard W. Smith

# Exhibit A



# SUBPOENA DUCES TECUM

RECEIVED
APR 1 2 2017
HUMANA LAW DEPT

| 1. TO | 2. FROM |
|---|---|
| Humana Inc.<br>c/o Matthew Varzally, Esq., Senior Counsel, Litigation &<br>Investigations Group<br>500 West Main Street<br>Louisville, KY 40202 | UNITED STATES OF AMERICA<br>FEDERAL TRADE COMMISSION |

This subpoena requires you to appear and testify at the request of the Federal Trade Commission at a hearing [or deposition] in the proceeding described in Item 6.

| 3. LOCATION OF HEARING | 4. YOUR APPEARANCE WILL BE BEFORE |
|---|---|
| Federal Trade Commission<br>400 7th St. SW<br>Washington, DC 20024 | Dylan Brown, Esq. |
| | 5. DATE AND TIME OF HEARING OR DEPOSITION<br>May 2, 2017* |

6. SUBJECT OF INVESTIGATION

Walgreens Boots Alliance, Inc.'s proposed acquisition of Rite Aid Corporation, File No. 161-0026.

See attached Resolution directing use of compulsory process.

7. RECORDS YOU MUST BRING WITH YOU

See attached Definitions, Instructions, and Specifications.

*In lieu of a personal appearance, please submit the requested materials along with a certification to the completeness and accuracy of the return by May 2, 2017.

| 8. RECORDS CUSTODIAN/DEPUTY RECORDS CUSTODIAN | 9. COMMISSION COUNSEL |
|---|---|
| Michael Moiseyev (Custodian)<br>Daniel Zach (Deputy Custodian) | Dylan Brown, Esq.<br>Federal Trade Commission<br>400 7th Street, S.W.<br>Washington, DC 20024<br>202-326-3283 |

| DATE ISSUED | COMMISSIONER'S SIGNATURE |
|---|---|
| 4/10/17 | |

## GENERAL INSTRUCTIONS

The delivery of this subpoena to you by any method prescribed by the Commission's Rules of Practice is legal service and may subject you to a penalty imposed by law for failure to comply.

### PETITION TO LIMIT OR QUASH
The Commission's Rules of Practice require that any petition to limit or quash this subpoena be filed within 20 days after service or, if the return date is less than 20 days after service, prior to the return date. The original and ten copies of the petition must be filed with the Secretary of the Federal Trade Commission. Send one copy to the Commission Counsel named in Item 9.

### TRAVEL EXPENSES

Use the enclosed travel voucher to claim compensation to which you are entitled as a witness for the Commission. The completed travel voucher and this subpoena should be presented to Commission Counsel for payment. If you are permanently or temporarily living somewhere other than the address on this subpoena and it would require excessive travel for you to appear, you must get prior approval from Commission Counsel.

A copy of the Commission's Rules of Practice is available online at http://bit.ly/FTCRulesofPractice. Paper copies are available upon request.

This subpoena does not require approval by OMB under the Paperwork Reduction Act of 1980.

FTC Form 68-B (rev. 9/92)

## RETURN OF SERVICE

*I hereby certify that a duplicate original of the within
subpoena was duly served:*    (check the method used)

C   *in person.*

C   *by registered mail.*

C   *by leaving copy at principal office or place of business, to wit:*

*on the person named herein on:*

(Month, day, and year)

(Name of person making service)

(Official title)

Petition Exhibit 4

**SUBPOENA *DUCES TECUM***
**ISSUED TO HUMANA INC.**
**FTC File No. 161-0026**

Unless modified by agreement with the staff of the Federal Trade Commission (the "Commission" or the "FTC"), each Specification of this Subpoena *Duces Tecum* ("SDT") requires a complete search of the Company as defined in the Definitions, which appear after the following Specifications. Pursuant to the Commission's Rules of Practice, 16 C.F.R. § 2.7(k), a Company representatives must confer with the Commission representative identified in the final Instruction of this SDT within 14 days after receipt of this SDT. If the Company believes that the required search or any other part of this SDT can be narrowed in any way that is consistent with the Commission's need for information, you are encouraged to discuss such questions and possible modifications with the Commission representative. All modifications to this SDT must be agreed to in writing pursuant to the Commission's Rules of Practice, 16 C.F.R. § 2.7(1).

## SPECIFICATIONS

1. Submit all documents relating to the Proposed Acquisition, including, but not limited to, documents relating to effects of the Proposed Acquisition, Company plans to respond, adapt, or react to the Proposed Acquisition, and potential efficiencies or cost savings that may result from the Proposed Acquisition, including all underlying data, analysis, and calculations.

2. Submit all documents relating to the potential divestiture of assets from Walgreens or Rite Aid to any person in connection with the Proposed Acquisition, including, but not limited to,

    a. Correspondence with any other person, including, but not limited to, Walgreens, Rite Aid, or any potential buyer of divested assets from Walgreens or Rite Aid in connection with the Proposed Acquisition; and

    b. Documents relating to any review, evaluation, or analysis of any potential divestiture of assets from Walgreens or Rite Aid to any other person, including, but not limited to, the impact of such a divestiture on retail pharmacy network offerings, composition, and reimbursement rates.

3. Submit all documents relating to the Humana Walmart Rx Plan retail pharmacy network, including, but not limited to,

    a. Correspondence with, or documents otherwise related to discussions with, Chains, PSAOs, or other providers of the Relevant Service regarding participation in the Humana Walmart Rx Plan and the terms of such participation;

    b. Documents relating to the Humana Walmart Rx Plan retail pharmacy network's ability to satisfy geographic access requirements of CMS or of current or

prospective plan members, including communications with plan sponsors or insured individuals;

    c. Documents relating to any consideration or plans to alter the composition or benefit structure of the Humana Walmart Rx Plan retail pharmacy network, such as the inclusion of additional preferred cost-sharing pharmacies to provide the Relevant Service; and

    d. Documents relating to the actual or considered development or promotion of a Preferred Network with a benefit structure including more pharmacies as preferred cost-sharing pharmacies than the Humana Walmart Rx Plan, in response to CMS feedback, scrutiny, or concern regarding access to pharmacies offering preferred cost sharing.

4. Submit all documents reflecting or otherwise relating to communications with CMS regarding the following:

    a. Benefit designs or levels of access of any of the Humana Medicare PDP Plans' retail pharmacy networks;

    b. The benefit design or levels of access to pharmacies offering preferred cost sharing in the Humana Walmart Rx Plan;

    c. Beneficiary access to pharmacies offering preferred cost sharing in the Humana Walmart Rx Plan;

    d. Any action that CMS may take regarding any plan that offers insufficient meaningful access to pharmacies offering preferred cost-sharing;

    e. Findings, questions, concern, or warnings by CMS that the Humana Walmart Rx Plan may be offering access to preferred cost-sharing pharmacies in a way that may be misleading to beneficiaries;

    f. Findings, questions, concern, or warnings by CMS that Humana may be influencing beneficiaries to enroll in PDP plans in which beneficiaries do not have meaningful and/or convenient access to preferred cost-sharing pharmacies; and

    g. Findings, questions, concern, or warnings that the Humana Walmart Rx Plan retail pharmacy network, or the networks of any other Humana Medicare PDP plans, may offer an inadequate level of access to preferred cost sharing pharmacies.

## DEFINITIONS

For the purposes of this SDT, the following definitions apply:

A.    The term "the Company" or "Humana" means Humana Inc., its domestic and foreign parents, predecessors, subsidiaries, affiliates, partnerships, and joint ventures, and all directors, officers, principals, employees, agents, and representatives of the foregoing. The terms "subsidiary," "affiliate," and "joint venture" refer to any person in which there is partial (25% of more) or total ownership or control between the Company and any other person.

B.    The term "Rite Aid" means Rite Aid Corporation and all of its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing. The terms "subsidiary," "affiliate," and "joint venture" refer to any person in which there is partial (25% or more) or total ownership or control between Rite Aid and any other person.

C.    The term "Walgreens" means Walgreens Boots Alliance, Inc., its domestic and foreign parents, predecessors, divisions, subsidiaries, affiliates, partnerships, and joint ventures, and all directors, officers, employees, agents, and representatives of the foregoing. The terms "subsidiary," "affiliate," and "joint venture" refer to any person in which there is partial (25% or more) or total ownership or control between Walgreens and any other person.

D.    The term "documents" means any information, on paper or electronic format, including written, recorded, and graphic materials of every kind in the possession, custody, or control of the Company. The term "documents" includes, without limitation: electronic mail messages; audio files, instant messages, drafts of documents; metadata and other bibliographic or historical data describing or relating to documents created, revised, or distributed electronically; copies of documents that are not identical duplicates of the originals in that person's files; and copies of documents the originals of which are not in the possession, custody, or control of the Company.

> 1.  Unless otherwise specified, the term "documents" excludes:
>
>> a.  bills of lading, invoices, purchase orders, customs declarations, and other similar documents of a purely transactional nature;
>>
>> b.  architectural plans and engineering blueprints; and
>>
>> c.  documents solely relating to environmental, tax, human resources, OSHA, or ERISA issues.

2. The term "computer files" includes information stored in, or accessible through, computer or other information retrieval systems. Thus, the Company should produce documents that exist in machine-readable form, including documents stored in personal computers, portable computers, workstations, minicomputers, mainframes, servers, backup disks and tapes, archive disks and tapes, and other forms of offline storage, whether on or off Company premises. If the Company believes that the required search of backup disks and tapes and archive disks and tapes can be narrowed in any way that is consistent with the Commission's need for documents and information, you are encouraged to discuss a possible modification to this instruction with the Commission representatives identified on the last page of this SDT. The Commission representative will consider modifying this instruction to:

   a. exclude the search and production of files from backup disks and tapes and archive disks and tapes unless it appears that files are missing from files that exist in personal computers, portable computers, workstations, minicomputers, mainframes, and servers searched by the Company;

   b. limit the portion of backup disks and tapes and archive disks and tapes that needs to be searched and produced to certain key individuals, or certain time periods or certain Specifications identified by Commission representatives; or

   c. include other proposals consistent with Commission policy and the facts of the case.

E. The term "person" includes the Company and means any natural person, corporate entity, partnership, association, joint venture, government entity, or trust.

F. The term "relating to" means in whole or in part constituting, containing, concerning, discussing, describing, analyzing, identifying, or stating.

G. The terms "and" and "or" have both conjunctive and disjunctive meanings.

H. The term "plans" means tentative and preliminary proposals, recommendations, or considerations, whether or not finalized or authorized, as well as those that have been adopted.

I. The term "Chain" means any corporation that owns 50 or more pharmacy locations nationwide, either under a single banner or multiple banners, including but not limited to, Walgreens Boots Alliance, Inc., CVS Pharmacy, Wal-Mart Stores, Inc., Rite Aid, Inc., Ahold U.S.A., Inc., Albertsons Companies, Associated Food Stores, Inc., Aurora Health Care, Bartell Drug Co., Bashas' Grocery Stores, Bi Mart Corporation, Brookshire Brothers, Brookshire Grocery Company, CARE Pharmacies, Cerberus Capital

Management, Costco Wholesale Corporation, Delhaize America, Inc., Discount Drug Mart, Inc., Fred's Inc., Giant Eagle, Inc., The Golub Corporation, The Great Atlantic & Pacific Tea Company, LP, Haggen, Inc., Hy Vee, Inc., Ingles Markets Inc., K-VA-T Food Stores, Inc., Kinney Drugs, Inc., The Kroger Company, Lone Star Funds, Medicap Pharmacy, The Medicine Shoppe Pharmacy, Meijer, Inc., Publix Super Markets, Inc., Raley's Supermarkets, Roundy's Supermarkets, Inc., Sav-Mor Drug Stores, Inc., Save Mart Supermarkets, Inc., Schnuck Markets, Inc., ShopKo Stores Operating Co., LLC, Spartan Stores, Target Corporation, Top Markets, Inc., United Drug Cooperative, Wakefern Food Corporation, Wegmans Food Markets, Inc., and Weis Markets, Inc.

J.    "CMS" means the Centers for Medicare & Medicaid Services.

K.    "geographic access" means the proximity and geographic accessibility of preferred cost sharing pharmacies to plan beneficiaries in a Limited Network or Preferred Network.

L.    The term "Limited Network" means any retail pharmacy network that excludes certain pharmacies, Chains, or PSAOs from the network.

M.    The term "Preferred Network" means any retail pharmacy network where a group of pharmacies, Chains, or PSAOs designated as preferred pharmacies offer lower co-payments or other cost-saving structures to plan beneficiaries that non-preferred pharmacies do not provide.

N.    The term "prescription pharmaceuticals" means ethical drugs or pharmaceutical products generally dispensed by a licensed pharmacist.

O.    The term "Proposed Acquisition" means Walgreens' proposed acquisition of Rite Aid.

P.    The term "Pharmacy Services Administrative Organizations" or "PSAO" means any buying group, comprised of at least 50 independent pharmacies, that represents independent retail pharmacies in contract negotiations with PBMs and other third-party payers. The term PSAO may include, but is not limited to, Good Neighbor Pharmacy Provider Network, Access Health, LeaderNET, EPIC Pharmacy Network, Inc., Third Party Station, United Drugs, MHA Long Term Care Pharmacy Network, Third Party Network, American Pharmacy Network Solutions, TriNet Third Party Network, RxPr1de / Managed Pharmacy Care, Managed Care Connection, Medicine Shoppe International, and RxSelect Pharmacy Network.

Q.    The term "Retail Pharmacy Services" means the dispensing of prescription pharmaceuticals, in-person at a brick-and-mortar retail pharmacy.

R.    The term "retail pharmacy" means a retail site or store that dispenses prescription pharmaceuticals and other controlled substances.

S.    The term "Relevant Service" means Retail Pharmacy Services.

## INSTRUCTIONS

For purposes of this SDT, the following instructions apply:

I.      All references to year refer to calendar year.  Unless otherwise specified, each of the Specifications calls for documents for each of the years from January 1, 2014 to the present.

II.     This SDT shall be deemed continuing in nature so as to require production of all documents responsive to any Specification included in this SDT produced or obtained by the Company up to 45 calendar days prior to the date of the Company's full compliance with this SDT.

III.    Do not produce any Sensitive Personally Identifiable Information ("Sensitive PII") prior to discussing the information with a Commission representative.  If any document responsive to a particular Specification contains unresponsive Sensitive PII, redact the unresponsive Sensitive PII prior to producing the document.

The term "Sensitive Personally Identifiable Information" means an individual's Social Security Number alone; or an individual's name, address, or phone number in combination with one or more of the following:

- date of birth
- driver's license number or other state identification number, or a foreign country equivalent
- passport number
- financial account number
- credit or debit card number

IV.     Forms of Production: The Company shall submit documents as instructed below absent written consent signed by an Assistant Director.

a)      Documents stored in electronic or hard copy formats in the ordinary course of business shall be submitted in electronic format provided that such copies are true, correct, and complete copies of the original documents:

i.      Submit Microsoft Access, Excel, and PowerPoint in native format with extracted text and metadata;

ii.     Submit all documents other than those provided pursuant to subparts (a)(i) or (a)(iii) in image format with extracted text and metadata; and

iii.    Submit all hard copy documents in image format accompanied by OCR.

b)      For each document submitted electronically, include the following metadata fields

and information:

    i.      For loose electronic files other than email: beginning Bates or document identification number, ending Bates or document identification number, page count, custodian, creation date and time, modification date and time, last accessed date and time, size, location or path file name, and SHA Hash value;

    ii.     For emails: beginning Bates or document identification number, ending Bates or document identification number, page count, custodian, to, from, CC, BCC, subject, date and time sent, child records (the beginning Bates or document identification number of attachments delimited by a semicolon);

    iii.    For email attachments: beginning Bates or document identification number, ending Bates or document identification number, page count, custodian, creation date and time, modification date and time, last accessed date and time, size, location or path file name, parent record (beginning Bates or document identification number of parent email), and SHA Hash value; and

    iv.    For hard copy documents: beginning Bates or document identification number, ending Bates or document identification number, page count, and custodian.

c)    If the Company intends to utilize any de-duplication or email threading software or services when collecting or reviewing information that is stored in the Company's computer systems or electronic storage media in response to this SDT, or if the Company's computer systems contain or utilize such software, the Company must contact a Commission representative to determine, with the assistance of the appropriate government technical officials, whether and in what manner the Company may use such software or services when producing materials in response to this SDT.

d)    For each Specification marked with an asterisk (*), and to the extent any other responsive data exists electronically, provide such data in Excel spreadsheet with all underlying data un-redacted and all underlying formulas and algorithms intact.

e)    Submit electronic files and data as follows:

    i.      For any production over 10 gigabytes, use IDE and EIDE hard disk drives, formatted in Microsoft Windows-compatible, uncompressed data in a USB 2.0 external enclosure; and

    ii.     For productions under 10 gigabytes, CD-R CD-ROM and DVD-ROM for Windows-compatible personal computers, and USB 2.0 Flash Drives are also acceptable storage formats.

        iii.     **All documents produced in electronic format shall be scanned for
and free of viruses. The Commission will return any infected media
for replacement, which may affect the timing of the Company's
compliance with this SDT.**

V.     All documents responsive to this SDT, regardless of format or form and regardless of
whether submitted in paper or electronic form:

    a)     Shall be produced in complete form, un-redacted unless privileged, and in the
order in which they appear in the Company's files and shall not be shuffled or
otherwise rearranged. For example:

        i.     If in their original condition papers were stapled, clipped, or otherwise
fastened together or maintained in file folders, binders, covers, or
containers, they shall be produced in such form, and any documents that
must be removed from their original folders, binders, covers, or
containers in order to be produced shall be identified in a manner so as
to clearly specify the folder, binder, cover, or container from which such
documents came; and

        ii.    If in their original condition electronic documents were maintained in
folders or otherwise organized, they shall be produced in such form and
information shall be produced so as to clearly specify the folder or
organization format.

    b)    If written in a language other than English, shall be translated into English, with
the English translation attached to the foreign language document;

    c)    Shall be produced in color where necessary to interpret the document;

    d)    Shall be marked on each page with corporate identification and consecutive
document control numbers;

    e)    Shall be accompanied by an affidavit of an officer of the Company stating that the
copies are true, correct, and complete copies of the original documents; and

    f)    Shall be accompanied by an index that identifies: (i) the name of each person
from whom responsive documents are submitted; and (ii) the corresponding
consecutive document control number(s) used to identify that person's
documents, and if submitted in paper form, the box number containing such
documents. If the index exists as a computer file(s), provide the index both as a
printed hard copy and in machine readable form (provided that Commission
representatives determine prior to submission that the machine readable form
would be in a format that allows the agency to use the computer files). The
Commission representative will provide a sample index upon request.

VI.    If any material called for by this SDT is withheld based on a claim of protected status, 16

C.F.R. § 2.7(a)(4), the claim must be asserted no later than the return date of this SDT. In addition, pursuant to 16 C.F.R. § 2.11(a)(1), submit, together with the claim, a detailed log of the items withheld. The information in the log shall be of sufficient detail to enable the Commission staff to assess the validity of the claim for each document, including attachments, without disclosing the protected information. Unless modified by the Commission representative identified on the last page of this SDT, submit the log in a searchable and sortable electronic format, and, for each document, including attachments, provide:

a) Document control number(s)

b) The full title (if the withheld material is a document) and the full file name (if the withheld material is in electronic form);

c) A description of the material withheld (for example, a letter, memorandum, or email), including any attachments;

d) The date the material was created;

e) The date the material was sent to each recipient (if different from the date the material was created);

f) The email addresses, if any, or other electronic contact information to the extent used in the document, from which and to which each document was sent;

g) The names, titles, business addresses, email addresses or other electronic contact information, and relevant affiliations of all authors;

h) The names, titles, business addresses, email addresses or other electronic contact information, and relevant affiliations of all recipients of the material;

i) The names, titles, business addresses, email addresses or other electronic contact information, and relevant affiliations of all persons copied on the material;

j) The factual basis supporting the claim that the material is protected; and

k) Any other pertinent information necessary to support the assertion of protected status by operation of law.

In the log, identify by an asterisk each attorney who is an author, recipient, or person copied on the material. The titles, business addresses, email addresses, and relevant affiliations of all authors, recipients, and persons copied on the material may be provided in a legend appended to the log. However, provide in the log the information required by Instruction VI(f). The lead attorney or attorney responsible for supervising the review of the material and who made the determination to assert the claim of protected status must attest, in writing, to the log.

A document, including all attachments, may be withheld or redacted only to the extent

necessary to preserve any claim of protected status. Unless otherwise provided in the instructions accompanying this SDT, and except for information and material subject to a valid claim of protected status, all responsive information and material shall be produced without redaction.

VII.    If the Company is unable to answer any questions fully, supply such information as is available. Explain why such answer is incomplete, the efforts made by the Company to obtain the information, and the source from which the complete answer may be obtained. If books and records that provide accurate answers are not available, enter best estimates and describe how the estimates were derived, including the sources or bases of such estimates. Estimated data should be followed by the notation "est." If there is no reasonable way for the Company to make an estimate, provide an explanation.

VIII.   If documents responsive to a particular Specification no longer exist for reasons other than the ordinary course of business or the implementation of the Company's document retention policy, but the Company has reason to believe have been in existence, state the circumstances under which they were lost or destroyed, describe the documents to the fullest extent possible, state the Specification(s) to which they are responsive, and identify persons having knowledge of the content of such documents. In order for the Company's response to this SDT to be complete, the attached certification form must be executed by the official supervising compliance with this SDT, notarized, and submitted along with the responsive materials.

Any questions you have relating to the scope or meaning of anything in this SDT or suggestions for possible modifications thereto should be directed to Dylan Brown at (202) 326-3283. The response to the SDT shall be addressed to the attention of Dylan Brown and delivered between 8:30 a.m. and 5:00 p.m. on any business day on or before **April 31, 2017** to Federal Trade Commission, 400 7th Street, SW, Washington, DC 20024. If you wish to submit your response by United States mail, please call one of the staff listed above for mailing instructions.

### SUBPOENA *DUCES TECUM*
### Issued to Humana Inc.
### FTC File No. 161-0026

### CERTIFICATION

This response to the *Subpoena Duces Tecum* issued by the Federal Trade Commission, together with any and all appendices and attachments thereto, was prepared and assembled under my supervision in accordance with instructions issued by the Federal Trade Commission. The information is, to the best of my knowledge, true, correct, and complete, subject to the recognition that where books and records do not provide the required data, reasonable estimates have been made. Where responses contain estimates, this is so stated in the response.

Where copies rather than original documents have been submitted, the copies are true, correct and complete. If the Commission uses such copies in any court or administrative proceeding, the Company will not object based on the Commission not offering the original document.

I declare under penalty of perjury that the foregoing is true and correct.

_____

TYPE OR PRINT NAME AND TITLE

_____

(Signature)

Subscribed and sworn to before me at the City of _____,

State of _____, this _____ day of _____, 20__.

_____

(Notary Public)

My Commission expires:

UNITED STATES OF AMERICA
BEFORE THE FEDERAL TRADE COMMISSION

COMMISSIONERS:     Edith Ramirez, Chairwoman
Julie Brill
Maureen K. Ohlhausen
Terrell McSweeny

RESOLUTION AUTHORIZING USE OF COMPULSORY
PROCESS IN NONPUBLIC INVESTIGATION

File No. 161-0026

Nature and Scope of Investigation:

To determine whether the proposed acquisition of Rite Aid Corporation by Walgreens
Boots Alliance, Inc. violates Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, as
amended; to determine whether the aforesaid proposed acquisition, if consummated, would
violate Section 7 of the Clayton Act, 15 U.S.C. § 18, or Section 5 of the Federal Trade
Commission Act, 15 U.S.C. § 45, as amended; and to determine whether the requirements of
Section 7A of the Clayton Act, 15 U.S.C. § 18a, have been or will be fulfilled with respect to the
proposed transaction.

The Federal Trade Commission hereby resolves and directs that any and all compulsory
processes available to it be used in connection with this investigation.

Authority to Conduct Investigation:

Sections 6, 9, 10, and 20 of the Federal Trade Commission Act, 15 U.S.C. §§ 46, 49, 50,
and 57b-1, as amended; FTC Procedures and Rules of Practice, 16 C.F.R. § 1.1, *et seq.* and
supplements thereto.

By direction of the Commission.

Donald S. Clark
Secretary

Issued:   January 5, 2016

# Exhibit B



1776 K STREET NW
WASHINGTON, DC 20006
PHONE   202.719.7000

www.wileyrein.com

April 28, 2017

Richard W. Smith
202.719.7468
rwsmith@wileyrein.com

Katherine C. Campbell
202.719.7583
kcampbell@wileyrein.com

**VIA EMAIL**

Dylan Brown
Federal Trade Commission
400 7th Street, SW
Washington, DC 20024
DBrown4@ftc.gov

**Re:   Humana Inc. Meet and Confer**

Dear Mr. Brown:

We write to confirm the substance of the meet and confer we held April 26
regarding the subpoena *duces tecum* and subpoena *ad testificandum* served on
Humana Inc. ("Humana") on April 12, 2017.

## Objections

With respect to the subpoena *duces tecum*, we objected to the requests as overly
broad, unduly burdensome, and irrelevant to, and outside the scope of, the subject
matter of the investigation.  We further objected to producing documents protected
by the attorney-client privilege or attorney work product protection.  Additionally,
we mentioned that many of the responsive documents contain proprietary and/or
confidential information, and we sought assurances that the Federal Trade
Commission ("FTC") would take steps to protect such information.  You agreed to
send us a letter detailing how the FTC handles proprietary information, which we
have now received.

With respect to the subpoena *ad testificandum*, we objected on the grounds of
relevance and overbreadth.  Many of the matters for examination are overly broad
and lack specificity such that we could not realistically prepare a witness to respond
to them, or doing so would be unduly burdensome.

## Subpoena *Duces Tecum*

Regarding Specifications 1 and 2, we proposed narrowing our search and
production to two key custodians: Jay Ecleberry, Director of Humana Pharmacy
Solutions, and Laura White, a strategic consultant for Humana Pharmacy Solutions.
Subject to confirmation with your supervisors, you stated that you would agree to
limit the specifications to these two custodians, without prejudice to requesting a



Dylan Brown
April 28, 2017
Page 2

more expansive search if a review of those documents revealed other critical custodians.

Regarding Specification 3, we objected to this request as overly broad and irrelevant to the subject matter of the investigation.  You explained that the FTC expects Walgreens and Rite Aid to point to the Humana Walmart Rx Plan as an example of a plan in which none of the major three pharmacy chains are a cost-shared provider.  You predicted that the FTC may respond to that example by questioning the plan's ability to satisfy geographic access requirements.  And we advised that CMS has definitively approved the plan as meeting those requirements, reiterating that a Walgreens and Rite Aid merger would be "plan neutral" with respect to the Humana offering.

You ultimately proposed that we provide documents describing the design of the Humana plans, the preferred/non-preferred status of the pharmacy chains within those plans, and the history of Walgreens' participation or non-participation in those plans.  We agreed to discuss with Humana whether this narrowed approach was practicable, and to return to you for further discussion as soon as possible.  Indeed, in the time since our call concluded, we have been working diligently with Humana to determine whether such documents are readily available, or could be created, to satisfy your stated needs.

Regarding Specification 4, we objected on the grounds that the request is overly broad and unduly burdensome.  Moreover, we relayed our understanding that the most pertinent documents related to plan design are publicly available. While you agreed with us that some documents are public, you asked us for a written response clearly identifying the public location of the documents.  We had some discussion about other non-public documents, and we said that some would certainly be privileged, while others would be unduly burdensome to produce given the public documents and their lack of relevance to the investigation.  Finally, you mentioned that the FTC is not seeking all communications with CMS and documents related to CMS (you specifically mentioned marketing documents as unnecessary), but is most interested in documents related to plan design, geographic access, and the involvement of Walgreens.  Again, we agreed to discuss your suggestions with our client to determine whether they are meaningful in light of the expected number of documents we would be required to search and produce, and we have working diligently with our client since then to make that determination.

Petition Exhibit 4



Dylan Brown
April 28, 2017
Page 3

Finally, with respect to each of the specifications, you explained that the FTC is not contemplating requiring Humana to provide a certificate of compliance. Instead, you requested that we disclose the steps we take to search for and to produce the documents most central to the investigation. Also, with respect to each of the specifications, you seemed amenable to a phased approach, as we have employed in the past, that would have us make an initial good faith production of selected, immediately available documents, without prejudice to further requests going forward.

### Subpoena *Ad Testificandum*

The deposition is currently scheduled for May 8, 2017. We confirmed that we have a trial scheduled that week, now potentially starting that day given the Court's emerging scheduling conflict, and you confirmed that the FTC will not require production of a witness on that date, especially given that it would want the documents in hand prior to the deposition.

As for the substance, many of the matters for examination are data and fact intensive, and we said at the outset that we believed Humana could provide a more helpful response in writing. As a result, we proposed several options in lieu of a deposition, including providing a written response to a targeted set of questions or providing Laura White and/or Jay Ecleberry for an informal telephone call. You agreed to consider those alternatives and appeared most amenable to a written response to a targeted set of questions. You also suggested that the FTC may withdraw the subpoena and instead seek the deposition of either Ms. White or Mr. Ecleberry in their personal capacities. We agreed to continue to work together on these issues, but to focus attention for now on the documents.

We should also mention that in further discussions with Humana since the meet and confer, we have learned that Mr. Ecleberry would be the appropriate person, as a Director-level employee, to respond to your inquiries, and would no longer suggest Ms. White as the best person with knowledge of your specifications.

### Petition to Limit or Quash

Our deadline to file a petition to limit or quash is Monday. We mentioned that Humana has instructed us to preserve its rights by filing a petition to limit or quash, unless we can agree to a modest extension of the deadline to allow for further negotiations. You suggested that you would consider such an extension, but would



Dylan Brown
April 28, 2017
Page 4

need more information about our proposed timeline for producing documents. We
described for you the time-consuming and expensive process we would be forced to
undertake to respond to the subpoena, and said that we did not foresee any scenario
under which we could complete a production next week, without significant
narrowing, and that we could not accurately predict a deadline without
understanding the full scope of documents that we would mutually agree would be
produced in an initial phase. Nevertheless, we committed to discussing this request
with our client and returning to you for further discussions. We expect to be able to
provide a more informed response on Monday.

                    *              *              *

Dylan, we appreciate your taking the time to meet and confer with us on these
important issues. As we mentioned on the phone, Humana is committed to assisting
the FTC in every reasonable way and is well along the path to doing so. We
sincerely hope we can reach agreement on Monday before the deadline for filing
arrives.

Sincerely,

Katie Campbell

Richard W. Smith
Katherine C. Campbell


cc: Matthew R. Varzally (by email)

# Exhibit C



1776 K STREET NW
WASHINGTON, DC 20006
PHONE   202.719.7000

www.wileyrein.com

May 5, 2017

Richard W. Smith
202.719.7468
rwsmith@wileyrein.com

Katherine C. Campbell
202.719.7583
kcampbell@wileyrein.com

**VIA EMAIL**

Dylan G. Brown
Federal Trade Commission
400 7th Street, SW
Washington, DC 20024
DBrown4@ftc.gov

**Re:   Humana Inc. Meet and Confer**

Dear Mr. Brown:

We write to confirm the substance of our May 1 discussions regarding the subpoena
*duces tecum* and subpoena *ad testificandum* served on Humana Inc. ("Humana") on
April 12, 2017.

Regarding Specifications 1 and 2, we agreed that Jay Ecleberry, Director of
Humana Pharmacy Solutions, and Laura White, a strategic consultant for Humana
Pharmacy Solutions, will self-collect documents and communications related to the
proposed merger and any potential divestiture. We represented that we expect to
produce these documents by May 9, with the caveat that we do not yet know the
volume of such documents. You agreed that no further documents will be needed at
this time from other custodians, although you reserved the right to seek a broader
production at a later time.

With respect to Specification 3, you have indicated that the Commission is most
interested in documents related to the history of Walgreens' inclusion and exclusion
from the Humana Medicare plans. We have denied the relevance of such
documents, and have pointed to the extraordinary burden such a production would
entail. In the spirit of compromise, however, we offered to produce slides
describing the structure of Humana's prescription drug plans, as well as to prepare
an annotated chronology describing the history of Walgreens' participation or non-
participation in those plans and its preferred/non-preferred status in those plans.
We welcomed the Commission's input into the content of such a summary, but the
Commission rejected that approach. We agreed to continue to consider whether
additional "middle ground" compromises are possible, as did you, but none have
been agreed to.

With respect to Specification 4, you have said that the focus is on geographic access
and on Humana's internal debates about CMS's statements of concern, if any. We



Dylan Brown
May 5, 2017
Page 2

have pointed to public sources of external communications, statements, and data and denied the relevance of the request. In the spirit of compromise, however, we offered to provide any letters CMS sent to Humana concluding that the Humana plans were outliers with regard to geographic access. We further offered to identify with specificity the public report prepared by CMS which describes each plan's access levels to preferred cost sharing pharmacies by geographic area. But the Commission rejected that approach. Again, we both agreed to consider additional areas of common ground, but have found none.

With respect to the subpoena *ad testificandum*, you agreed to consider strongly allowing Humana to submit a declaration as a substitute for a deposition. We agreed to continue to work together on this issue, but to focus attention for now on the documents.

We voiced concern that we had an imminent deadline to file our objections to the subpoenas, and you agreed that the FTC would extend Humana's deadline to respond to Specifications 1 and 2 until May 9, 2017; to Specifications 3 and 4 until May 16, 2017; and to quash the subpoena *ad testificandum* until May 23, 2017. You also agreed to reschedule the deposition date, to the extent one is held, to May 30, 2017. We have received written confirmation of these extensions from you separately.

Although we have thus far been unable to reach an agreement regarding Specifications 3 and 4, we still hope to find a compromise solution in lieu of litigating. But as we have stated during our multiple calls, Humana does not believe that it – as a non-party – should be forced to respond to requests that appear to us to be only tangentially relevant to the scope of the investigation. The requests, as we have explained, would cost Humana enormously in terms of time, expense, and resources to comply with, and seem to be of comparatively little to no benefit to the FTC. Moreover, to the extent any of these topics is relevant, you have already stated that you have documents related to them from other parties, and we have identified public and government sources where the FTC can obtain them more readily.

We look forward to continuing our discussions.



Dylan Brown
May 5, 2017
Page 3

Sincerely,

*Katie Campbell*

Richard W. Smith
Katherine C. Campbell


cc:  Matthew R. Varzally (by email)

# Exhibit D



**Wiley Rein LLP**

1776 K STREET NW
WASHINGTON, DC 20006
PHONE   202.719.7000

www.wileyrein.com

May 9, 2017

Richard W. Smith
202.719.7468
rwsmith@wileyrein.com

Katherine C. Campbell
202.719.7583
kcampbell@wileyrein.com

**VIA HAND DELIVERY**

Dylan G. Brown
Federal Trade Commission
400 7th Street, SW
Washington, DC 20024

**Re:   Humana Inc. Subpoenas**

Dear Mr. Brown:

On behalf of our client Humana Inc., we enclose a disk containing documents numbered HUMANA0000001 – HUMANA0000013, which comprise the set of self-collected documents that Humana agreed to produce, pursuant to the subpoena *duces tecum* served on it by the Federal Trade Commission on April 12, 2017, and our subsequent narrowing discussions.   Humana makes the enclosed production without waiver of or prejudice to any of its objections.

Because of the sensitive nature of the documents enclosed herein (including but not limited to the fact that some of these materials fall within the scope of a Non-Disclosure Agreement, which is itself confidential), all of the produced documents shall be accorded confidential treatment under all governing statutes and the Commission's Rules, as confirmed by your April 27, 2017 letter.

Sincerely,

*Katie Campbell*

Richard W. Smith
Katherine C. Campbell

Enclosure

cc:  Matthew R. Varzally (by email, without enclosure)

Petition Exhibit 4

# Exhibit E



UNITED STATES OF AMERICA
### FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Dylan G. Brown
Attorney, Mergers I
Bureau of Competition
(202) 326-3283
dbrown4@ftc.gov

May 1, 2017

**VIA ELECTRONIC MAIL**

Richard W. Smith, Esq.
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
Email: rwsmith@wileyrein.com

Re:   **Proposed Acquisition of Rite Aid Corporation by Walgreens Boots Alliance,
Inc., File No. 161-0026**

Dear Richard:

Pursuant to Commission Rule 2.7(l), this letter modifies the Subpoena *Duces Tecum* ("SDT") and Subpoena *Ad Testificandum* ("SAT") that the Federal Trade Commission issued to Humana Inc. ("the Company") on April 10, 2017. Our agreement to modify the SDT and SAT is based on the accuracy and completeness of the information we have received from the Company to date. If such information is inaccurate or incomplete, we reserve the right to reexamine any issue affected by the modification described below. All terms in this letter are used in accordance with the Definitions and Instructions in the SDT and SAT.

We agree to the following deadline extensions:

- **SDT**:
  - For Specifications 1 and 2, the deadline to respond, and deadline to file petition to limit or quash, are extended to May 9, 2017.
  - For Specifications 3 and 4, the deadline to respond, and deadline to file petition to limit or quash, are extended to May 16, 2017.

- **SAT**: The date of the hearing (item #5 of the SAT) is changed to state "May 30, 2017 at 9:30am". The deadline to file petition to limit or quash is extended to May 23, 2017.

\*          \*          \*

Richard W. Smith, Esq.
May 1, 2017
Page 2

Thank you for your cooperation with our ongoing investigation. If you have any questions, please feel free to contact me by phone at (202) 326-3283 or via e-mail at dbrown4@ftc.gov.

Sincerely,

Dylan G. Brown

**APPROVED:**

Michael R. Moiseyev
Assistant Director
Mergers I Division
Bureau of Competition

# Exhibit F



UNITED STATES OF AMERICA
FEDERAL TRADE COMMISSION
WASHINGTON, D.C. 20580

Dylan G. Brown
Attorney, Mergers I
Bureau of Competition
(202) 326-3283
dbrown4@ftc.gov

May 8, 2017

**VIA ELECTRONIC MAIL**

Richard W. Smith, Esq.
Wiley Rein LLP
1776 K Street NW
Washington, DC  20006
Email: rwsmith@wileyrein.com

> Re:  **Proposed Acquisition of Rite Aid Corporation by Walgreens Boots Alliance,
> Inc., File No. 161-0026**

Dear Richard:

Pursuant to Commission Rule 2.7(l), this letter modifies the Subpoena *Duces Tecum* ("SDT") that the Federal Trade Commission issued to Humana Inc. ("the Company") on April 10, 2017.  Our agreement to modify the SDT is based on the accuracy and completeness of the information we have received from the Company to date – specifically, Humana's representation that it is collecting for production additional documents relevant to the specifications below which were not part of the company's initial collection.  If such information is inaccurate or incomplete, we reserve the right to reexamine any issue affected by the modification described below.  All terms in this letter are used in accordance with the Definitions and Instructions in the SDT.

We agree to the following deadline extension:  For Specifications 1 and 2, the deadline to respond, and deadline to file petition to limit or quash, is extended to May 16, 2017.

Thank you for your cooperation with our ongoing investigation.  If you have any questions, please feel free to contact me by phone at (202) 326-3283 or via e-mail at dbrown4@ftc.gov.

Sincerely,

Dylan G. Brown

Richard W. Smith, Esq.
May 8, 2017
Page 2


**APPROVED:**

Michael R. Moiseyev
Assistant Director
Mergers I Division
Bureau of Competition