# Petition Exhibit 5

Federal Trade Commission Order Denying Petition to Limit Subpoena *Duces Tecum*, June 5, 2017

**UNITED STATES OF AMERICA**
**BEFORE THE FEDERAL TRADE COMMISSION**

**COMMISSIONERS:** **Maureen K. Ohlhausen, Acting Chairman**
**Terrell McSweeny**

| | | |
|---|---|---|
| **In the Matter of**<br><br>**SUBPOENA *DUCES TECUM* ISSUED TO HUMANA, INC. DATED APRIL 10, 2017** | ) ) ) ) ) ) ) | **File No. 161-0026**<br>**June 5, 2017** |

**ORDER DENYING PETITION TO LIMIT SUBPOENA *DUCES TECUM***

**By McSWEENY, Commissioner:**

Humana, Inc. ("Humana" or "Petitioner") has filed a petition to limit a subpoena *duces tecum* issued by the Commission on April 17, 2017. For the reasons stated below, the petition to limit ("Petition") is denied.

## I. BACKGROUND

On October 27, 2015, Walgreens Boots Alliance ("Walgreens") announced its intent to acquire Rite Aid Corporation, one of Walgreens' major retail pharmacy competitors. As a result, the FTC opened an investigation to determine whether there is reason to believe that the proposed acquisition violates Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, or Section 7 of the Clayton Act, 15 U.S.C. § 18, and whether that proposal meets the requirements of Section 7A of the Clayton Act, 15 U.S.C. § 18a.

At their most basic, most retail pharmacy purchases involve three types of actors: (1) consumers, who buy pharmaceuticals; (2) pharmacies, who sell pharmaceuticals; and (3) payers, usually insurance providers, who receive premiums from consumers and develop plans to provide discounts on the costs of certain drugs. In order to develop insurance plans attractive to consumers and thereby build their customer base, insurers often seek to recruit pharmacies that consumers perceive as desirable (*i.e.*, lower-cost or more conveniently located) by providing them with increased reimbursements for the costs of the pharmaceuticals. The more desirable a retail pharmacy chain is to consumers, the greater the amount of reimbursement from payers it can demand, creating the risk that payers will pass these costs on to their customers in the form of higher premiums. Some insurers' plans use a "preferred" model, in which a "preferred" pharmacy agrees to accept lower reimbursements in exchange for the plan steering customers to the pharmacy by offering greater discounts. The Centers for Medicare & Medicaid Services ("CMS") approves these plans offered to consumers, part of which involves ensuring that the plans (1) provide consumers with sufficient access to participating pharmacies in each geographic area and (2) do not misrepresent the benefits or coverage offered to consumers.

As part of this investigation, on April 10, 2017, the FTC issued a subpoena *duces tecum* and accompanying subpoena *ad testificandum* to Humana, Inc., a payer that is one of the nation's largest providers of Medicare Part D prescription drug plans.[1] Humana offers the Humana Walmart Rx Plan, in which Walmart is the designated "preferred" provider. The Humana Walmart Rx Plan is nearly unique, in that it is one of the only Medicare Part D prescription drug plans in which neither Walgreens, Rite Aid, nor CVS is a "preferred" provider. As such, FTC staff seeks to determine whether a retail pharmacy network that features Walmart as the sole "preferred" provider is a viable and attractive option for Medicare Part D plans seeking to attract beneficiaries in any geographic areas, and if so, which geographic areas. If evidence indicated that beneficiaries in certain geographic areas do not view the Humana Walmart Rx Plan as attractive (for example, because Walmart lacks a significant presence in those areas), this would be useful to assess whether—from the perspective of Medicare Part D plan sponsors in different areas of the country—Walmart-only preferred networks are meaningful substitutes for networks that designate Walgreens, Rite Aid, and/or CVS as preferred.

The subpoena *duces tecum* ("subpoena") seeks documents concerning Humana's analysis of the proposed merger and any potential divestitures of assets by either Walgreens or Rite Aid (specifications 1 and 2); Humana's Walmart Rx Plan (specification 3); and Humana's communications with CMS concerning whether its Medicare plans, including the Walmart Rx Plan, offer sufficiently meaningful access to pharmacies across geographic areas (specification 4). This information enables staff to assess the attractiveness of Humana's Walmart Rx Plan to beneficiaries in different geographic areas, based on Humana's own documents and documents related to CMS's oversight of the plan.

The FTC served the subpoena on Humana on April 12, 2017. In response, counsel for Humana claimed that the subpoena was "overly broad, unduly burdensome, and irrelevant" to the investigation, although counsel did not provide specific or detailed reasons supporting these objections. Nonetheless, Humana counsel and FTC staff met and conferred regarding potential narrowing of the scope of the subpoena. Staff agreed that Humana could initially confine its search for documents responsive to Specifications 1 and 2 to two key custodians, and that the FTC would request documents from additional custodians only if it became necessary. FTC staff twice agreed to extend the deadline for production of documents, first on May 1, 2017 and then again on May 8, 2017, for a final return date of May 16, 2017. On May 9, Humana produced five documents totaling 13 pages responsive to Specifications 1 and 2.

On May 16, 2017, the deadline for production, Humana requested additional time to produce documents or file a petition to limit or quash the subpoena. In response, staff declined to extend the return dates absent a definitive schedule for production. Humana also requested modifications to Specification 3, concerning the Walmart Rx Plan, and Specification 4, concerning Humana's communications with CMS. In response, staff offered to further limit the subpoena by allowing Humana to confine its production for those specifications to the two key custodians whose files Humana was already reviewing for Specifications 1 and 2. Staff also offered to relieve Humana of Specification 3's requirement to produce "all documents" regarding the Humana Walmart Rx Plan. Instead, Humana would be required to answer only the itemized

[1] Humana filed a petition to quash the subpoena *ad testificandum* on May 23, 2017.

subparts of Specification 3, each of which concerns the plan's ability to compete effectively. Humana rejected these offers and filed the instant petition to limit.

Humana's petition asks the Commission to quash Specifications 3 and 4 in their entirety. Humana claims that the information sought is not relevant to the present merger investigation and, in any event, that it is publicly available from other sources, including other government agencies. Humana also contends that these specifications are overly broad and unduly burdensome, particularly given Humana's status as a non-party.[2] Finally, Humana raises several general objections to the subpoena as a whole.

## II. ANALYSIS

Agency compulsory process is proper if the inquiry is within the authority of the agency, the demand is not too indefinite, and the information sought is reasonably relevant to the inquiry, as defined by the Commission's investigatory resolution.[3] Agencies have wide latitude to determine what information is relevant to their law enforcement investigations.[4] As the D.C. Circuit has explained, "[t]he standard for judging relevancy in an investigatory proceeding is more relaxed than in an adjudicatory one . . . . The requested material, therefore, need only be relevant to the *investigation* – the boundary of which may be defined quite generally."[5]

The documents requested by the subpoena are directly relevant to the FTC's investigation into Walgreens' proposed acquisition of Rite Aid. These documents enable FTC staff to assess the degree to which Humana's Walmart Rx Plan—which features Walmart as its sole preferred provider—is attractive to consumers in different geographic areas. This information is largely unavailable from sources other than Humana and only in part through its regulator, CMS. Humana also fails to support its claim that complying with the subpoena would cause undue burden.

---

2 In addition, Humana objects to Specifications 1 and 2 "out of an abundance of caution and solely to preserve its objections pursuant to the Commission's rules." It "intends to produce additional non-privileged documents in response to" those specifications once they "are fully processed and reviewed." Pet., at 4.

3 *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950); *FTC v. Invention Submission Corp.*, 965 F.2d 1086, 1089-90 (D.C. Cir. 1992); *FTC v. Texaco, Inc.*, 555 F.2d 862, 872-74 (D.C. Cir. 1977).

4 *See, e.g.*, *Morton Salt*, 338 U.S. at 642-43 ("[Administrative agencies have] a power of inquisition, if one chooses to call it that, which is not derived from the judicial function. It is more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not.").

5 *Invention Submission*, 965 F.2d at 1090 (emphasis in original, internal citations omitted) (citing *FTC v. Carter*, 636 F.2d 781, 787-88 (D.C. Cir. 1980), and *Texaco*, 555 F.3d at 874 & n.26).

### A. The Subpoena is Narrowly Tailored and Seeks Information Directly Relevant to the Investigation.

There is no merit to Humana's claims that the subpoena is overly broad and requests irrelevant information. In the context of administrative subpoenas, "relevance" is defined broadly and with deference to an agency's determination.[6] An administrative agency is accorded "extreme breadth" in conducting an investigation.[7] As the D.C. Circuit has stated, the standard for judging relevance in an administrative investigation is "more relaxed" than in an adjudicatory proceeding.[8] As a result, a CID recipient must demonstrate that the agency's determination is "obviously wrong," or the documents are "plainly irrelevant" to the investigation's purpose as defined by the investigational resolution.[9] Thus, a subpoena request is overbroad only where it is "out of proportion to the ends sought," and "of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power."[10]

In this case, the Commission's resolution authorizes an investigation "[t]o determine whether the proposed acquisition of Rite Aid . . . by Walgreens" would violate the FTC Act because it would amount to an unfair method of competition or would violate the Clayton Act because the acquisition would "substantially . . . lessen competition, or . . . tend to create a monopoly." *See* 15 U.S.C. §§ 18, 45. Humana fails to support its claim that the subpoena requests—two of which relate directly to the proposed acquisition and two of which relate to the competitive landscape for retail pharmacy services—have no bearing on the competitive significance of the proposed merger. To the contrary, the two specifications at issue, Specifications 3 and 4, are directly relevant to assessing the impact of the merger on competition. As discussed above, FTC staff seeks to determine the degree to which Humana's Walmart Rx Plan is attractive to consumers in need of Medicare Part D coverage in different geographic areas, which, in turn, will facilitate the FTC staff's analysis of the importance of competition between the merging parties in different geographic areas. Specification 3 seeks to obtain Humana's own documents regarding its experiences in developing and administering the Humana Walmart Rx Plan, while Specification 4 seeks documents relating to CMS's oversight of the Humana Walmart Rx Plan, and similar plans. As such, this information is highly relevant to staff's investigation. Moreover, the fact that staff has tailored the subpoena to this plan, and to those types of documents mostly likely to shed light on its competitiveness, confirms that the subpoena is not overly broad.

---

6 *FTC v. Church & Dwight Co.*, 665 F.3d 1312, 1315-16 (D.C. Cir. 2011); *FTC v. Ken Roberts Co.*, 276 F.3d 583, 586 (D.C. Cir. 2001).

7 *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. RTC*, 5 F.3d 1508, 1517 (D.C. Cir. 1993).

8 *Invention Submission*, 965 F.2d at 1090.

9 *Id.* at 1089; *Carter*, 636 F.2d at 788.

10 *U.S. v. Wyatt*, 637 F.2d 293, 302 (5th Cir. 1981) (quoting, *inter alia*, *Morton Salt*, 338 U.S. at 652).

**B. The Information Sought is Not Readily Available to the FTC from Other Sources.**

Humana claims that Specifications 3 and 4 are improper because they "seek[] documents that are publicly available to the FTC or readily available to the FTC through another government agency." Pet., 11-12.

There is no basis for this assertion. Humana asserts generally that the documents are "publicly available," ignoring the fact that many of the documents sought are by their nature not public, including internal documents for which Humana is the best—and only—source. For example, Specification 3 expressly calls for (1) Humana's analysis of "the Humana Walmart Rx Plan retail pharmacy network's ability to satisfy geographic access requirements of CMS"; (2) Humana's "consideration or plans to alter the composition or benefit structure of the Humana Walmart Rx Plan retail pharmacy network"; and (3) Humana's "actual or considered development or promotion of a Preferred Network with a benefit structure including more pharmacies as preferred cost-sharing pharmacies than the Humana Walmart Rx Plan." While Specification 4 seeks documents relating to Humana's communications with CMS, that request is not limited to direct communications with CMS. It also covers Humana's communications with other third parties as well as Humana's *internal* analyses of its interactions with CMS, including its responses to any concerns CMS raised about Humana's plans related to pharmacy access. Again, only Humana would have access to these internal analyses.

The subpoena seeks certain non-internal documents, including communications between Humana and CMS. Humana provides no support for its suggestion that these documents are "publicly available." Humana also speculates that these documents are "readily available to the FTC" through other sources. Even if Humana were somehow correct that all or some documents were available from other sources, the Commission is not obliged to seek records from multiple sources that are readily available from a single source. Instead, the Commission may issue process to a single source likely to have all of the necessary information, as it did here.[11]

**C. The Subpoena is Not Unduly Burdensome**

Humana also claims that Specifications 3 and 4 (and more generally, the subpoena as a whole) are unreasonable and unduly burdensome, particularly given its status as a non-party. Pet., 5-6. Humana does not offer any support for this contention other than the conclusory and

---

[11] In *In re Exxon Valdez*, the district court approved just such an approach, allowing a plaintiff to obtain from a nonparty trade association documents that were also available from each of the association's members because this was "more convenient, less burdensome [and] less expensive." 142 F.R.D. 380, 382-83 (D.D.C. 1992); *cf. Software Rights Archive, LLC v. Google Inc.*, No. 2:07-CV-511, 2009 WL 1438249, at *2 (D. Del. May 21, 2009) ("[T]here is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party, nor is there an absolute rule providing that the party must first seek those documents from an opposing party before seeking them from a non-party.")(quotation omitted); *Viacom Int'l, Inc. v. YouTube, Inc.*, No. C 08–80129 SI, 2008 WL 3876142, at *2-*3 (N.D. Cal. Aug.18, 2008) (same).

unattributed statements that compliance would require it to review and produce "thousands" or possibly "hundreds of thousands" of documents. *Id.*, 6, 8.

Where possible, FTC staff routinely work with subpoena recipients to limit the burdens imposed on them. Nonetheless, the standard for enforcement of administrative compulsory process is the same whether the subpoenaed entity is a target of the investigation or a third party. The statute authorizing the Commission to issue subpoenas specifically empowers the Commission to obtain from third-party "witnesses" "*all* such documentary evidence *relating to any matter under investigation*."[12] Indeed, an important and effective tool in investigations involves comparing, contrasting, and supplementing information and materials obtained from targets with that obtained from third parties. Thus, whether an administrative subpoena is issued to a target or a third party, it is not unduly burdensome unless the recipient shows that "compliance threatens to unduly disrupt or seriously hinder normal operations of a business."[13] This test is "not easily met."[14]

Nothing in Humana's cited cases supports its assertion that these standards are more relaxed for third parties. Pet., 5-6. The first, *Dow Chemical Co. v. Allen*, involved an administrative *trial* subpoena, not an *investigative* subpoena, and the court specifically acknowledged that investigative subpoenas may be broader in scope.[15] In addition, the type of burden at issue was completely different: the requests infringed nonparties' First Amendment academic freedoms by seeking unpublished data from ongoing and incomplete university research studies.[16] Indeed, the *Dow* court quoted from *FTC v. Dresser Industries, Inc.*, a case in which the court held that "one who opposes an agency's subpoena necessarily must bear a heavy burden. That burden is essentially the same *even if the subpoena is directed to a third party*."[17] Similarly, in *FTC v. Bowman*, the district court affirmed the Commission's authority to issue subpoenas to nonparties and enforced the subpoena, subject only to minor limitations on the

---

12 15 U.S.C. § 49 (emphasis added).

13 *See, e.g.*, *Invention Submission*, 965 F.2d at 1090 (citing *Texaco*, 555 F.2d at 882). *See also FTC v. Dresser Indus., Inc.*, 1977-1 Trade Cas. ¶ 61,400, 1977 WL 461238 (D.D.C. 1977) (holding that this test applies to a subpoena issued to a nonparty). *Accord Commission Order Affirming June 18, 2012 Ruling Denying Petition of Samsung Telecommunications America, LLC to Limit Subpoena Duces Tecum*, File No. 111-0163 (September 7, 2012), https://www.ftc.gov/enforcement/cases-proceedings/petitions-quash/google-inc (investigative subpoena issued on nonparty) (citing *FTC v. Rockefeller*, 441 F. Supp. 234, 240-42 (S.D.N.Y. 1977)); *In the Matter of Evanston Northwestern Healthcare Corp.*, No. 9315, 2004 WL 2380507, at *2 (Sept. 28, 2004) (citation omitted) (process issued to nonparties in administrative adjudicative proceeding); *FTC v. Ernstthal*, Misc. No. 78-0064, 1978 WL 1375 (D.D.C. May 30, 1978, *aff'd*, 607 F.2d 488, 489 n.1 (D.C. Cir. 1979) (rejecting burden, definiteness, and relevance challenges to administrative subpoena issued to nonparty in adjudicative hearing).

14 *Texaco*, 555 F.2d at 882.

15 *Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1267-68 (7th Cir. 1982).

16 *See id.* at 1266, 1273-77.

17 *See id.* at 1277 (quoting *Dresser Indus.*, 1977 WL 461238) (emphasis added).

scope of documents sought.[18] Indeed, *Dresser* cited *Bowman* for its holding that nonparties bear the same burden as targets of an investigation.[19]

Further, Humana offers nothing to support its assertion that compliance with the subpoena would require it to review and produce "thousands," or even "hundreds of thousands," of documents. A recipient of agency process must demonstrate that the burden of compliance is undue.[20] "Some burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest."[21] Thus, Humana must show the "measure of [its] grievance rather than [asking the court] to assume it."[22]

But even assuming that responsive documents number in the thousands or hundreds of thousands, that fact alone would not be sufficient to demonstrate undue burden given Humana's size, resources, and the availability of advanced search techniques. Indeed, Humana's most recent annual report notes that its current and past business practices are subject to ongoing review by various state and federal authorities, who regularly scrutinize numerous facets of Humana's business, including its pharmacy benefits.[23] Humana cannot claim that responding to the FTC's subpoena "seriously disrupts or unduly hinders" its normal business operations when those operations expressly involve government oversight and reporting.

In short, there is no basis for Humana's claim that the burden imposed by the subpoena is undue. Staff's offer to allow Humana to produce documents from only two custodians (which we adopt herein) will further temper any burden Humana must bear.

### D. Humana's General Objections Provide No Basis for Limiting or Quashing the Subpoena

Humana also lists a number of general objections, most of which merely restate its objections to particular subpoena specifications, lack accompanying argument or support, or have no bearing on disposition of the present petition. We address the remaining objections below.

---

18 *FTC v. Bowman*, 149 F. Supp. 624, 629-30 (N.D. Ill. 1957), *aff'd*, 248 F.2d 456 (7th Cir. 1957).

19 *Dresser Indus.*, 1977 WL 461238.

20 *In the Matter of January 16, 2014 Civil Investigative Demand Issued to the College Network, Inc.*, File No. 1323236, 2014 FTC LEXIS 90, at *5 (April 21, 2014) (citing, *inter alia*, *Texaco*, 555 F.2d at 882).

21 *Texaco*, 555 F.2d at 882.

22 *Morton Salt*, 338 U.S. at 654.

23 *See* Humana, Inc., Annual Report (Form 10-K) at 129. This report further indicates that the company has substantial financial resources, having received over $54 billion in revenue and paid over $52 billion in operating expenses in fiscal year 2016. *See id.* at 38.

General Objection 1: Duplicative to earlier information requests. Humana objects that the requests in the subpoena are duplicative of three other requests issued to the company by the Commission: a Civil Investigative Demand ("CID") and subpoena *duces tecum* on January 14, 2016, and a CID issued on March 7, 2017. Pet., 1-2, 7-8.[24] This objection is baseless.

Although FTC staff *requested* some of the same documents in 2016, Humana did not produce those documents. The Commission issued compulsory process to Humana and the CID and subpoena issued on January 14, 2016 sought information that overlaps with the current subpoena at issue, including requests for Humana's analysis of the Walgreens-Rite Aid merger, and information regarding Humana's retail pharmacy networks. Humana produced one Excel file and a single PowerPoint slide in response.

Nor is there any duplication to the CID issued on March 3, 2017. That CID contained only one specification that sought Humana's annual purchases of retail pharmacy services by line of business and by pharmacy chain. This specification does not overlap with the current subpoena, but even if it did, this would also not be duplicative for the same reasons as above: Humana did not produce documents or data in response to this CID but rather provided only a brief factual proffer in lieu of a full production of information.

General Objection 4: Privileged information. Humana objects to the subpoena to the extent it seeks privileged information. The Commission does not seek privileged material. The Commission's Rules of Practice instruct a subpoena recipient how to assert claims of privilege, *see* Rule 2.11, 16 C.F.R. § 2.11, and that Rule is restated in the subpoena's instructions. This objection is therefore without merit.

General Objection 5: Confidential information. Humana also objects to the subpoena to the extent it seeks confidential commercial information. That is not a proper basis for objecting to a subpoena. The Commission's Rules of Practice and relevant statutory provisions provide ample protection for documents and information—including proprietary business and sensitive customer information—obtained by the Commission through compulsory process.[25] Courts have consistently held that these provisions provide adequate protection and that the Commission has a full right to access even the most highly sensitive information including trade secrets.[26] This objection is therefore without merit.

---

[24] Humana also claims that the current subpoena includes requests for information that the FTC "previously conceded it did not need." Pet., 7. Again, Humana offers no support for this claim. Even if arguendo this assertion were accurate, over the course of a years-long investigation, staff may learn that particular facts have greater importance than was ascertainable at an initial stage.

[25] *See* 15 U.S.C. §§ 46(f), 57b-2; 16 C.F.R. § 4.10(a).

[26] *See, e.g., FTC* v. *Invention Submission Corp.*, No. 89-272, 1991 WL 47104, at *4 (D.D.C. 1991), *aff'd*, 965 F.2d 1086, 1089 (D.C. Cir. 1992); *In re Subpoena Duces Tecum*, 228 F.3d 341, 351 (4th Cir. 2000) (enforcing subpoena requesting sensitive health care information in light of statutory protections).

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED THAT** Humana, Inc.'s Petition to Limit Subpoena *Duces Tecum* be, and it hereby is, **DENIED.**

We understand, however, that FTC staff consents to modifications to the subpoena. Accordingly, **IT IS FURTHER ORDERED THAT** the subpoena *duces tecum* be **MODIFIED** as follows:

a. Specifications 1, 2, 3, and 4 are modified to require Petitioner Humana to search for and produce responsive documents in the possession, custody, or control of custodians Jay Ecleberry and Laura White; and

b. Specification 3 is revised to replace the text "Submit all documents relating to the Humana Walmart Rx Plan retail pharmacy network, including, but not limited to," with "Submit the following documents:".

**IT IS FURTHER ORDERED THAT** Petitioner Humana, Inc. shall comply with the Commission's modified subpoena *duces tecum* on or before June 15, 2017.

By the Commission.

Donald S. Clark
Secretary

SEAL:
ISSUED: June 5, 2017